STATE v. ASBURY CHAVIS.

*Arraignment—Evidence—Judge's Charge—Murder.*

1. Upon removal of a trial for murder the transcript of the record showed that the prisoner was brought to the bar of the court, arraigned, plead not guilty, and then remanded to jail; *Held,* that it appeared with sufficient certainty the arraignment was *in open court.*

2. The *similiter* to the tender of issue upon the plea in such case, need not be entered of record.

3. Where there is but slight provocation, if the killing be done with an excess of violence out of all proportion to the provocation, it is murder.

4. *Therefore,* where the prisoner and two others being intoxicated and using vulgar and profane language met the deceased quietly coming along a public road and assaulted him, he using a fence rail in his defence, but not striking; and in the progress of the fight, they knocked him down with a rail; he rose up, ran, was pursued 130 yards by them, stabbed with a knife and killed; *Held* to be murder.

5. *Held further,* that on the trial in such case evidence of the violent character of deceased was properly rejected. It does not fall within the exception to the general rule against the admissibility of such evidence.

6. It is not error in the court to refuse to charge upon a supposed state of facts which do not appear in the evidence; nor to state an abstract principle of law not applicable to the facts.

(*State* v. *Craton,* 6 Ire., 164; *Langford's case,* Busb., 436; *Collins',* 8 Ire., 407; *Carroll's,* 5 Ire., 139; *Lamon's,* 3 Hawks., 175; *Hogue's,* 6 Jones, 381; *Barfield's,* 8 Ire., 344; *Ingold's,* 4 Jones, 216; *Hill's,* 4

Dev. & Bat., 491 ; *Rash's*, 12 Ire., 382 ; *Pease's*, 1 Jones, 251 ; *Haney's*, 2 Dev & Bat., 390 ; *Brown* v. *Patton*, 13 Ire., 446 ; *Curry's*, 1 Jones, 280 ; *Howell's*, 9 Ire., 485 ; *Hildreth's*, *Ibid.*, 429, cited and approved.)

INDICTMENT for Murder removed from Richmond and tried at Spring Term, 1878, of STANLY Superior Court, before *Moore, J.*

The first exceptions are stated in the opinion of the court. The prisoner and Allen Jacobs were charged with killing one Jere Everett. The evidence was in substance as follows: Laura Leak, a witness for the state, testified that she was going along a lane leading into a public road near the town of Rockingham in the afternoon of the day on which the homicide is alleged to have been committed, and having approached within fifty yards of the road, she saw deceased going towards Rockingham with a bundle on his head. On arriving at the road she saw deceased and three other men standing together about thirty yards from her ; they were talking, but she did not understand what was said ; they took hold of deceased and threw him down, but did not strike him at that time ; deceased got up and took a fence rail and struck at them, but did not know whether he hit any of them ; one of the men then struck deceased with a rail and knocked him down, and while down the prisoner struck as though with a knife, and when he rose the prisoner then struck at him again as with a knife ; deceased said "let me alone," and ran ; he was pursued by them one hundred and thirty yards (distance given by another witness) and she saw them have deceased down in the road ; their names were James Chavis (now dead), Allen Jacobs and Asbury Chavis ; they left him lying in the road, Allen Jacobs saying "come on, somebody is coming," and the prisoner ripped with his knife against the fence and replied " that he would kill any damned man who came there." She was very much frightened, and when deceased ran she got

over the fence into a corn field ; did not know the parties, but afterwards recognized them as the men who killed deceased.

Another witness testified that he saw three men on that day pass his place, and that they were intoxicated and were using vulgar and profane language; his attention on this account was attracted to them, and he saw them standing in the road near the mouth of the lane spoken of, and upon going in that direction, came upon deceased lying in the road, stabbed in several places and in a dying condition. He further testified that he heard the witness, Laura, make a different statement as to the point where they first took hold of deceased, from the one made by her on the trial, and did not think she could have seen them from where she was.

There was evidence that prisoner and deceased lived within five miles of each other, and had worked together several years. Evidence of violent character of the deceased was excluded, and prisoner excepted. The parties were arrested the evening of the homicide, and a bloody knife was found in prisoner's pocket.

The following instructions were asked in behalf of the prisoner :

1. Whatever either prisoner could do in his own defence he could do in defence of the other.

2. If the jury believe that deceased made the first assault, the prisoners had the right to repel force with force, and if they were assaulted with a rail, they were not bound to retreat, and if either of them killed deceased under these circumstances, the jury must acquit.

3. If the jury believe that prisoners threw deceased down in a mere drunken frolic and sport, not intending to harm him, and deceased becoming enraged assaulted them with the rail, and they were not able to retreat and killed out of necessity, the jury must acquit.

4. If the jury believe prisoners threw deceased down in sport and in consequence engaged in a sudden fist fight and their passions warming with the blows, they killed deceased, it would be manslaughter.

5. Even if the jury believe prisoners made the first assault with no intention of killing deceased or doing him any great bodily harm, and deceased returned the assault with a rail, and prisoners then killed him, it would be manslaughter only.

His Honor declined to give the instructions on the ground that they did not apply to the facts, but charged the jury, as to Asbury Chavis, that according to the evidence, if the jury should believe it, Laura Leak was the only eye witness to the transaction, and the guilt or innocence of the prisoner depended mainly on her testimony; and in estimating its value they should consider the excitement under which she naturally labored, her distance from the parties, and all the surrounding circumstances; and if fully satisfied from the whole evidence that she saw the difficulty as it occurred and has correctly stated it on the trial, the prisoner was guilty of murder. There was a verdict of guilty as to Asbury Chavis, and not guilty as to Allen Jacobs. Judgment, appeal by prisoner.

*Attorney General*, for the State.
*Messrs. Cole & Legrand*, for the prisoner.

ASHE, J. Before the case was submitted to the jury, the prisoners' counsel suggested a diminution of the record from Richmond superior court, and moved for a *certiorari* on the ground that it did not appear that the prisoners were arraigned in open court, and that the solicitor had not entered a *similiter* to the tender of issue on the plea of prisoners. The motion was refused and the prisoners excepted. Both of these exceptions were properly overruled. The first, because

the transcript of the record does show that the prisoners were brought to the bar of the court by the sheriff of Richmond county and arraigned on the charge of murder and plead not guilty, and were then remanded to the jail until the further order of the court in the cause. It has been held that where a record shows that a prisoner was brought to the bar in custody of the sheriff, and then, setting out the drawing of the jury and their verdict contains the entry—" the prisoner is remanded"—the presence of the prisoner during the whole trial appears with sufficient certainty. *State v. Craton,* 6 Ire. 164; *State v. Langford,* Busb., 436; *State v. Collins,* 8 Ire., 407' The second, because there is no necessity for entering a *similiter* on the record. It may be done *ore tenus. State v. Carroll,* 5 Ire., 139; *State v. Lamon,* 3 Hawks, 175.

2. The prisoner introduced no testimony, but offered to prove that deceased was a man of very dangerous and violent character. His Honor refused to admit the testimony and the prisoner excepted. The exception was properly overruled. *State v. Hogue,* 6 Jones, 381; *State v. Barfield,* 8 Ire., 344. The general rule upon this subject is laid down in these cases to which there are some exceptions (*Turpin's case,* 77 N. C., 473) but this case does not fall under them.

3. The first three instructions prayed for by the prisoner are predicated upon the idea that this is a case of excusable homicide, but there is no evidence in the case to warrant such instructions. Before the prisoner could excuse himself for the act of killing, he must have shown that he quitted the combat and retreated as far as he could before the mortal stroke was given, or was prevented from doing so by the fierceness of the attack, or that he was " sorely pressed " and killed the deceased to save his own life or prevent great bodily harm. *State v. Ingold,* 4 Jones, 216; *State v. Hill,* 4 Dev. & Bat., 491. In our case there is no pretence that the prisoner was reduced to any such necessity. There is no error in the refusal to give the instructions.

4. Nor was it error in the judge to refuse the fourth instruction, because there was no evidence to warrant it, and there was no evidence that the prisoner threw down the deceased *in sport,* or that they were engaged in a fist fight. It is the duty of the judge to lay down the law to the jury as applicable to the evidence introduced, and it is not error in him to refuse to give a charge upon a supposed state of facts which do not appear in the evidence. *State* v. *Rash,* 12 Ire., 382 ; *Brown* v. *Patton,* 13 Ire., 446 ; *State* v. *Peace,* 1 Jones, 251 ; *State* v. *Haney,* 2 Dev. and Bat., 390.

5. In the abstract, the fifth instruction asked for is a correct proposition of law, but is not applicable to the facts of this case. It is true as a general rule that where two men meet and fight upon a sudden quarrel, no advantage being taken, and one kill the other with a deadly weapon, it will be but manslaughter ; and in such case it matters not which struck the first blow. The law presumes malice in every wilful killing, and it is the provocation given in a mutual combat that extenuates the offence to manslaughter ; *therefore,* in every case of killing upon sudden quarrel, the grade of the crime depends upon the character of the provocation. If the provocation be great, it will be but manslaughter ; but if slight, and the killing be done with a degree of violence out of all proportion to the provocation, it will be murder. *State* v. *Curry,* 1 Jones, 280. There, Chief Justice PEARSON defined the exceptions to the general rule to be : 1st. Where there is a strong provocation and the killing is in an unusual manner, it is murder. 2nd. Where there is but slight provocation, if the killing be done with an excess of violence out of all proportion to the provocation, it is murder. 3rd. Where the right to chastise is abused, if the measure of chastisement or the weapon used is likely to kill, it is murder. See also *State* v. *Hildreth,* 9 Ire., 429.

We are constrained to hold that the facts of this case bring it within the second exception : The prisoner and his

comrades were going from the town of Rockingham, intoxicated, cursing and using vulgar language. They met the deceased quietly coming along the public road. They all three laid hold on him and threw him to the ground. He rose and struck at them with a rail, as he had the right to do, considering the overwhelming force opposed to him. But it does not appear that a blow was given. There is no proof that there were any bruises or marks of violence on the person of either of them,—and a blow with such an instrument would be apt to leave its mark. The deceased was then knocked down with a rail, and while on the ground, the prisoner struck at him as though with a knife. He rose up, and the prisoner struck at him again as if he had a knife. The deceased then said "let me alone" and ran. The prisoner and James Chavis pursued him one hundred and thirty yards, overtook him and were seen to have him down in the road, and no doubt it was there he received the last fatal stabs, for he never rose again; and in a few moments afterwards he was found lying there badly stabbed in several places, and in a dying condition. A man endued with the ordinary feelings of humanity, no matter how high his passions may have been excited, upon seeing his victim wilting in blood and struggling in the throes of death, would evince some relenting symptoms, but not so with the prisoner. He manifested no compunction for his bloody deed, and when called by Jacobs to "come on, somebody was coming," he ripped with his knife against the fence and said "he would kill any damned man that came there."

We think the cruel, brutal, and excessive violence used by the prisoner was out of all proportion to the provocation given by the assault with the rail under the circumstances. To use the language of Chief Justice NASH in the opinion delivered by him in State v. Howell, 9 Ire., 485, "this case is relieved from all doubt and uncertainty. The facts are few and simple, furnishing a full and complete instance in them-

selves of that malice which is essential to constitute a case of murder; of that *mala mens,* a mind regardless of the obligations of social duty, and fatally bent on mischief." We have carefully examined the record and find no error. Let this be certified, &c.

PER CURIAM.                                        No error.