## STATE v. CLYDE KENNEDY.

(Filed 3 March, 1915.)

**1. Appeal and Error—Evidence—Inferences—Homicide**

On appeal by defendant charged with homicide, and convicted of murder in the second degree, the exclusion by the judge of the defense of manslaughter entitles the appellant to the benefit of every inference that the jury could have reasonably and fairly drawn from the evidence in his favor on that phase of the case.

**2. Homicide—Provocation—Deadly Weapon—Evidence—Manslaughter.**

On a trial for a homicide, evidence which tends to show that the deceased had first attacked the prisoner with a deadly weapon, a knife, resulting in his being killed by him, is sufficient for the consideration of the jury upon the question whether he fought in the heat of blood upon legal provocation, so as to reduce the degree of the homicide from murder to manslaughter, under the circumstances.

**3. Homicide — Sudden Assault — Malice — Rebuttal — Trials — Questions for Jury.**

Where the prisoner has been *suddenly assaulted* by the deceased with a deadly weapon, and the evidence in his behalf tends to show that the former thereupon took the latter's life, it is sufficient upon the question of whether the assault was calculated to so arouse his passion as to rebut the malice which would otherwise have made the killing a murder, and reduce the degree of the offense to manslaughter.

**4. Same—Continued Assault—Appeal and Error.**

One who is acting in self-defense in an assault made upon him with a deadly weapon, a knife in this case, may continue the assault on his part, if reasonably necessary to put himself beyond danger and to the extent that the circumstances, as they reasonably appeared, will justify him for that purpose; and where there is evidence tending to show that the party thus first assailed, seeing there was no way to further retreat, killed his assailant with a paling he had torn from a fence, by repeatedly striking him with it, after he had several times been cut, it is sufficient upon the question of manslaughter; and under such circumstances it is reversible error for the trial judge to withdraw that phase of the case from the jury, though this evidence conflicts with the testimony of the State's witnesses.

APPEAL by defendant from *Peebles, J.,* at September Term, 1914, of CRAVEN.

The prisoner, Clyde Kennedy, was indicted in the court below, with Alexander Curtis and Sidney Gautier, for the murder of E. W. Sarlandt, and all were convicted of murder in the second degree.

The court charged the jury, among other things, that there was no evidence of manslaughter in the case. In this connection it becomes necessary, and will suffice, to state only a part of the prisoner's own testimony, which is as follows: "I was sitting with my hat in my hands in this position, and he walked up and said, 'Your dog bit me,' and I said, 'It ain't nothing of the kind,' and he said, 'You're a G— d— liar; he did bite me.' I said, 'It ain't no such d— thing.' In the meantime, while I was sitting that way, he tried to hit me in the face. I jumped up and got a lick on my right shoulder. As I jumped up he kicked me; just did hit me back here. I asked him what he was trying to do—to kill me, or what. He set the bottle down, then came at me with his knife in his right hand and cut at me, and when I jumped back he kicked at me. As I was backing he still followed me up till I got to the side of the fence. He cut my shirt twice. I didn't know he cut my shirt; I had it open. The last time he cut me was just before I got the paling off. I felt something sting. I found out there was no way to get away, and grabbed the paling off the fence. He was about 2 feet from me when I broke the paling—coming to me all the time. He was cutting at me and kicking at me at the same time. I pulled the paling off the fence and the paling broke. I hit at him and I imagine I hit him about the face somewhere. I couldn't see, as it was dark out there. When he struck his knife in my hat—I went to pick up my hat after I had hit him. As I started to pick up my hat, he came at me again. He was right on me then. I didn't hit him then with the paling. He started back, and it looked as if he started to catch against the post. He fell on his side and he rolled over once or twice, and we all left there then. I made a remark that if I hadn't hit him with that paling he would have killed me." And again, on cross-examination, he testified: "I didn't do anything at all

with my left hand. Yes, the one hand was sufficient. I don't know where I hit him. I didn't hit him but once. I don't know that his skull was broken unless he did it when he came up against the bench. I don't know whether he broke it or not. I didn't hit him after he got on the ground. Mr. Rowe came along after we went off and came back. I didn't tell Mr. Rowe this man was trying to kill me, because I didn't think there was anything much the matter with him. If I had, I'd have tried to take him to the hospital or something. No, he wasn't lying on the ground until I hit him. He called me a G— d— liar. No, that didn't make me mad; I have taken d— liar before. It didn't make me mad, because I knew the man. It didn't worry me any. It didn't pass through my mind after he had called it. I said it wasn't any such d—thing. No, it didn't make me mad when he hit me. I tried to get out of his way, but I couldn't. He was standing like this: like this is the bench, and he was along here, and I was standing here. I was sitting like this, and he tried to hit me in the face, and then he kicked me and then kept on following me up with a knife. He wasn't so drunk. I couldn't have walked away. I don't say he would have killed me, but I would have been cut to pieces. I had to go about as far from here to the middle of that door to get the paling."

There was evidence on the part of the State which contradicted that of the defendant and tended to show that the prisoner was either the aggressor in the beginning of the difficulty or, if not, that he and the deceased cursed each other and both entered willingly into the fight, the deceased armed with a knife and the prisoner with the paling, with which he struck the deceased several blows both before and after he was prostrate on the ground.

Judgment was entered on the verdict, and the prisoner, Clyde Kennedy, appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*D. L. Ward and Kellum & Loughlin for defendant.*

WALKER, J., after stating the case: We have not deemed it necessary to set out the entire evidence, but only so much as will present the merits of the exception taken to the charge of the court in regard to manslaughter, which, in our opinion, should be sustained. There was evidence in the case of murder in the first degree, murder in the second degree, manslaughter, and self-defense, and the court should have instructed the jury as to each offense and explained the law arising upon the evidence as properly applicable to each. As the judge excluded manslaughter from the case, the prisoner is entitled to the benefit of every inference that the jury could fairly and reasonably draw in his favor. The case is much

like that of *S. v. Curry,* 46 N. C., 280, where it appeared that two men were moving a boat up a river. They became involved in quarrel; one seized a pole and the other a boat-slide or piece of plank 8 feet long; the deceased gave the first blow by a stroke or punch with the pole (which had an iron spike at the end), making a bruise or puncture on the cheek of the prisoner and a bruise or cut over one of his eyes; the pole was broken by being struck against the side or bottom of the boat; the prisoner gave the deceased a blow with the slide on the head, by which he was knocked down upon the bottom of the boat; after he was down the prisoner continued to strike with the slide many times; how many blows he struck could not be determined; the deceased died twenty-four hours afterwards. A witness said he continued to strike from the time the witness's boat was 150 yards away until they were near enough for him to see that defendant was striking at deceased in the bottom of the boat— one boat floating down the stream and the other passing up to meet it. An examination of the body showed that the arms were bruised and one of them broken. The skull was fractured and there was blood over the brain. The head was bruised and bloody all over. The Court held that there was evidence of manslaughter. *Judge Pearson,* commenting upon the law as applied to the foregoing facts, condensed from the evidence in that case, said: "If two men fight upon a sudden quarrel, and one be killed, it is but manslaughter, although the death is caused by the use of a deadly weapon. But if, in such case, the killing be committed in an unusual manner, showing evidently that it is the effect of deliberate wickedness—malice, not passion—it is murder, although there be a high provocation. It is well settled that this is the general rule and the exception. His Honor was of opinion that the case under consideration fell within the exception, and the prisoner was guilty of murder. There was error." Again, referring to his own statement of the facts, as given above, he said: "Assuming these to be the facts, the question is, Does the case fall within any exception, so as to be murder and not manslaughter? Take a general view of the subject. If two men upon a sudden quarrel get into a fist fight, and one, without giving notice, draws a knife and stabs the other to the heart, or blows his brains out with a pistol, it is manslaughter, because, out of regard to the frailty of our nature, the killing is supposed to be the effect of passion, brought on by the high excitement of the fight. Does the case under consideration, where both parties seize upon weapons not prepared beforehand, but of a most unwieldy kind, and continue to use the same weapons throughout the conflict, bear any comparison in regard to its enormity with the cases of manslaughter stated above?" He then refers liberally to the authorities, *Rex v. Shaw,* 25 E. C. L., 443; *Watter's case,* 12 State Tr., 113, and gives illustrations therefrom as to what is a killing in an unusual manner that will rebut

the presumption that the slayer acted under provocation, and then proceeds to state the second exception, where, the provocation being slight, the killing is done with a degree of violence out of all proportion to it, this being murder, as it shows that he was not instigated by the provocation, but by malice and a wicked heart. But not so when two suddenly engage in a quarrel, and during the progress of the ensuing combat one draws a deadly weapon, taking no unfair advantage of his adversary, and slays him, or when there is a legal provocation, as in this case, the assault of E. W. Sarlandt with the knife, a deadly weapon, and, smarting under the provocation, the one assaulted draws a deadly weapon and kills his opponent, or when one assaults another in self-defense, but uses excessive force in doing so, under the supposed excitement of the conflict, the law, in all these cases, adjudges the killing to be manslaughter. The case last stated must be qualified by the statement that one who is acting in self-defense may continue the assault if reasonably necessary to put himself beyond danger and to the extent that the circumstances, as they reasonably appeared, will justify him for that purpose. But it is not necessary to enlarge upon these principles, except to add that, of course, although there be a provocation, it may be shown by evidence that the prisoner did not slay in consequence of it, but upon malice. This is laid down in *S. v. Smith,* 77 N. C., 488: "Homicide is murder unless it be attended with extenuating circumstances, which must appear to the satisfaction of the jury, and if the jury are left in doubt on this point, it is still murder. If A. assault B., giving him a severe blow, or otherwise making the provocation great, and B. strikes him with a deadly weapon and death ensues, the law, in deference to human passion, says this is manslaughter. If the provocation be slight, and it can be collected from the weapon used or any other circumstances that the prisoner intended to kill or do great bodily harm, and death follows, it is murder. The violence flows rather from brutal rage than human frailty. Foster's Cr. Law, 291." In *S. v. Chavis,* 80 N. C., 353, it was said to be true, as a general rule, that where two men meet and fight upon a sudden quarrel, no advantage being taken, and one kill the other with a deadly weapon, it will be but manslaughter; and in such case it matters not which struck the first blow. The law presumes malice in every willful killing, and it is the provocation given in a mutual combat that extenuates the offense to manslaughter; therefore, in every case of killing upon sudden quarrel the grade of the crime depends upon the character of the provocation. If the provocation be great, it will be but manslaughter; but if slight, and the killing be done with a degree of violence out of all proportion to the provocation, it will be murder, citing *S. v. Curry, supra;* and these were recognized to be the exceptions to the rule, as stated by *Chief Justice Pearson* in that case: "(1) Where there is a strong provocation and the killing is in an

unusual manner, it is murder.    (2) Where there is but slight provoca-
tion, if the killing be done with an excess of violence out of ·all proportion
to the provocation, it is murder.    (3) Where the right to chastise is
abused, if the measure of chastisement or the weapon used is likely to
kill, it is murder.    See, also, *S. v. Hildreth,* 31 N. C., 429." The pris-
oner, Asbury Chavis, was convicted of murder, and the judgment was
affirmed by this Court, upon the ground, though, that he and his associ-
ates had pursued the deceased upon slight provocation and brutally slain
him, without any necessity of doing so.    But *Judge Ashe* lays stress upon
the absence of proof in that case that the deceased had delivered any
blow with his weapon.    He had a fence rail, but did not use it.    We can-
not forbear from stating, in substance, at least, 'what was said in *S. v.
Tackett,* 8 N. C., 210: When the charge affirms "that a slight blow, not
threatening death or great bodily harm, will not ʼextenuate a homicide,
if the weapon be a deadly one," it authorizes the inference that a blow,
to constitute a legal provocation, must threaten death or great bodily
harm.    This, however, is no part of the description of a blow which all
the authorities hold sufficient to extenuate; for, if it amount to a breach
of the peace, and offer an indignity to the person receiving it, it is gen-
erally conceded that it will extenuate the homicide to manslaughter,
although a deadly weapon be used.    Accordingly, it is laid·down by Haw-
kins: "If one man, upon angry words, shall make an assault upon
another, either by pulling him by the nose or filliping him upon the fore-
head, and he that is so assaulted draw his sword and immediately run the
other through, that is but manslaughter."    The same passage is quoted
with approbation by Kelyng, 135; and I take the sound principle to be
that if any assault made with violence or circumstances of indignity upon
a man's person be resented immediately by the death of the aggressor, and
he who is assaulted act in the heat of blood and upon that provocation,
it will be but manslaughter.    When, therefore, a court is called upon to
pronounce the general rule, it should be that "Words are not a sufficient
provocation, but blows are a sufficient provocation to lessen the crime
into manslaughter."    *Taylor's case,* 5 Bur. Rep., 2796.    Some cases, how-
ever, have been attended with peculiar circumstances, showing the neces-
sity of a more critical and precise limitation of the rule.    In those excep-
tional cases, *Stedman's case,* East's Cr. Law, 234, and *Rex,* 1 Strange,
499, where it was held to be murder, there were circumstances indicating
deadly revenge or diabolical fury or evidence of protracted and unrelent-
ing cruelty, and they are not really exceptions to the general rule, but
come within the principle of the rule itself.    And *Chief Justice Taylor*
says regarding them: "But if in *Stedman's case* he had instantly, upon
receiving the box on the ear, stabbed the woman, and the officer in the
other case had stabbed Mr. Luttrell upon receiving the blow with the

cane, the cases must have been pronounced to be manslaughter." It is all based upon the notion that if, when one is assaulted, he instantly thereupon, before time has elapsed for reason to assume its sway, in the transport of passion thus excited, and without previous malice, returns the blow with a deadly weapon and kills his assailant, it will be manslaughter. *S. v. Hill,* 20 N. C., at p. 496. As was said in that case by *Judge Gaston,* this is not because the law supposes that this passion made him unconscious of what he was about to do, and stripped the act of killing of an intent to commit it, but because it presumes that passion disturbed the sway of reason, and made him regardless of her admonitions. It does not look upon him as temporarily deprived of intellect, and therefore not an accountable agent, but as one in whom the exercise of judgment is impeded by the violence of excitement, and accountable, therefore, as an *infirm* human being. We nowhere find that the passion which in law rebuts the imputation of malice must be so overpowering as for the time to shut out knowledge and destroy volition. All the writers concur in representing this indulgence of the law to be a condescension to the frailty of the human frame, which during the *furor brevis* renders a man deaf to the voice of reason, so that although the act done was intentional of death, it was not the result of malignity of heart, but imputable to human infirmity. We are not speaking here of those assaults which, being of a deadly character, permit of different conduct on the part of the assailed, and which the law will view with greater leniency. It was held in *S. v. Hale,* 9 N. C., 582; *S. v. Cæsar,* 31 N. C., 391, and *S. v. Miller,* 112 N. C., 878, that "whenever force is used upon the person of another, under circumstances amounting to an indictable offense, such force is a legal provocation." It does not necessarily excuse or justify a killing, as that will depend upon the character of the force used, and the surrounding circumstances, but it may extenuate by reducing the crime to a lower grade than murder. The above definition of a legal provocation is not intended to imply that an act must be indictable before it can become a legal provocation (*S. v. Wiel,* 18 N. C., 121), for it is not thus restricted in its application, as will appear from that decision.

In this case, if the facts are as stated by the prisoner in his testimony, and by those witnesses who corroborated him, he was assaulted by the deceased with a knife and was cut, and the deceased continued to press upon him while he was backing away, and not until he thought he was in danger of life or limb did he use the plank which he had jerked from the fence. This was calculated to arouse his passion and to dethrone his reason and to rebut the malice which otherwise would have made the killing a murder, and he was entitled to have this phase of the evidence submitted to the jury, with proper instructions. It does not prevent a conviction for murder, for the jury may find that is not true, but that he

acted from malice, which the law implies from use of a deadly weapon, or even with deliberation and premeditation.

The views we have expressed are strongly supported, we think, by *S. v. Curry, S. v. Miller,* and the other cases above cited, and also by the following: *S. v. Floyd,* 51 N. C., 392; *S. v. Ellick,* 60 N. C., 629; *S. v. Massage,* 65 N. C., 480; *S. v. Harman,* 78 N. C., 515; *S. v. Kennedy,* 91 N. C., 572; *S. v. Exum,* 138 N. C., 599; *S. v. Baldwin,* 152 N. C., 822; *S. v. Yates,* 155 N. C., 450.

In *Baldwin's case Justice Hoke* said: "Manslaughter is the unlawful killing of another without malice, and under given conditions this crime may be established, though the killing has been both unlawful and intentional. Thus, if two men fight upon a sudden quarrel and on equal terms, at least at the outset, and in the progress of the fight one kills the other— kills in the anger naturally aroused by the combat—this ordinarily will be but manslaughter. In such case, though the killing may have been both unlawful and intentional, the passion, if aroused by provocation which the law deems adequate, is said to displace malice and is regarded as a mitigating circumstance reducing the degree of the crime."

Upon a careful review of the case, our conclusion is that the court erred in excluding from the consideration of the jury the view which was presented as to manslaughter. There are other serious questions raised by the exceptions, but they may not be again presented, and, therefore, require no consideration now.

New trial.