### STATE V. TOM SUDDRETH.

(Filed 13 April, 1949.)

**1. Criminal Law § 57a: Jury § 1—**

One of the jurors, while the prosecution for homicide was pending, had the sister of the dead man as one of his passengers in a four mile automobile trip. Defendant moved to set aside the verdict. The juror stated upon oath that he did not know his passenger was the sister of the deceased, and the court found upon investigation that the case was not discussed during the ride. *Held:* Exception to the refusal of the motion is not reviewable, since the court's ruling upon the competency of jurors is conclusive unless accompanied by some imputed error of law. G.S. 9-14.

**2. Homicide § 27b—**

The omission of the word "intentional" in stating the presumptions arising from an intentional killing with a deadly weapon will not be held for prejudicial error when the fact that the killing was intentional is not controverted and it appears from defendant's own testimony that he intentionally shot deceased but claimed that he did so in self-defense.

**3. Homicide § 27f—**

> The court's charge upon murder in the second degree will not be held for error as taking away from the jury the right to consider defendant's plea of self-defense when immediately after giving the charge complained of the court gave a full and proper charge on the plea of self-defense.

**4. Homicide § 27b—**

> Where the State's evidence shows an intentional killing with a deadly weapon, the failure of the court to reiterate the *quantum* of proof resting upon the State in one instance while stating the facts upon which the jury might find the defendant guilty of manslaughter upon defendant's evidence in mitigation, does not constitute reversible error, the charge being construed contextually.

APPEAL by defendant from *Pless, J.,* at November Term, 1948, of CALDWELL.

Criminal prosecution tried upon indictment charging the defendant with the murder of one Horry Crisp, Jr.

The defendant and the deceased were brothers-in-law, having married sisters. They lived within one-half mile of each other, and it is apparent from the record that there had been some bad feeling between the two families because the wife of the defendant had been talking about the deceased as a result of some information she had received in a letter.

The State's evidence tends to show that on 23 October, 1948, the deceased and his wife left home together about 5 :00 p.m., for the purpose of contacting a colored man on some business matter. They had to go by the home of the defendant on their way to see the colored man. When they reached the home of the defendant, the wife of the deceased expressed a desire to see the letter her sister had received which contained the uncomplimentary statements about the deceased. The wife of the defendant was not at home, but the defendant sent one of his children for her. She came home and got the letter; and the defendant's wife, and the deceased and his wife were standing in front of the house in the public road, and the wife of the defendant was reading the letter when "all of a sudden she turned and started up the road and Horry glanced up and took about two steps backward and the gun fired." The defendant fired the gun from his porch and between 100 and 150 shot took effect in the back of the deceased. The deceased died before reaching the hospital in Lenoir, which was about four or five miles from the home of the defendant.

According to the State's evidence, the deceased was armed with a pistol but made no attempt to use it. Neither did he threaten the defendant's wife or make any statement to the defendant about killing him or being killed.

The defendant testified that on the day of the killing, the deceased had been by his house between one and two o'clock and had shot at some of his chickens; that when he came back around five o'clock the deceased had been drinking and they had some words and he begged him to leave; that the deceased said "Tom I came here to kill or be killed; I had just as soon die now as any other time and had just as soon die in the electric chair as any other place"; that he was on his porch leaning against the door, while his wife and the deceased and his wife were in the road talking and looking at the letter . . . "I didn't go in the house to get the shotgun . . . It was setting right beside the door and I just had to reach in and get it. While he was cursing I reached in like that (indicating) and got the gun and came out with it . . . I . . . had loaded it just before that. I figured maybe I could scare him off without having to kill him . . . When I stepped out and he saw my gun, he made a dive and I had to do something . . . He went backwards with his gun pointed at me and I had to shoot or do something, and I shot just as he turned. He had his gun on me. It was cocked and it was loaded. He was looking right at me at the time I shot and he wheeled . . . I shot him because I saw him going down into that bridge or culvert or ditch and I thought he wanted to barricade himself and shoot me."

The bridge was across the road from the defendant's house, and there was a rock wall about five and a half feet below the bridge.

The jury returned a verdict of guilty of manslaughter and from the judgment imposed, the defendant appeals, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*W. H. Strickland and Max C. Wilson for defendant.*

DENNY, J. After verdict and before judgment was imposed, the defendant moved to set aside the verdict because Elijah Bentley, one of the jurors, had permitted Mrs. Mabel Crisp Whisnant, sister of the deceased, Horry Crisp, Jr., to ride in his car while the case was pending. The court made a thorough investigation of the matter and found as a fact that the juror did permit Mrs. Whisnant to ride in the back seat of his car with her husband, for a distance of some four miles on the afternoon of Thursday, 2 December, 1948, while the case was in progress; that Carl Gilbert sat on the front seat of the car with the juror, who drove the car, and that the case was not discussed during the time Mrs. Whisnant and her husband were in the car. The juror also stated upon oath that he did not know Mrs. Whisnant was a sister of the dead man.

The court being of the opinion that the result of the case had not been affected by the association alleged and shown, declined to set aside the

verdict either as a matter of law or in its discretion. The defendant excepted.

It is provided by statute, G.S. 9-14, that the judge "shall decide all questions as to the competency of jurors," and his rulings thereon are final and "not subject to review on appeal unless accompanied by some imputed error of law," *S. v. DeGraffenreid,* 224 N.C. 517, 13 S.E. 2d 523; *S. v. Hill,* 225 N.C. 74, 33 S.E. 2d 470; *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686. This exception presents no reviewable question of law and will not be sustained.

The court charged the jury that "there is a presumption where a killing is done with a deadly weapon, that it is done with malice, and . . . an unlawful killing with malice is murder in the second degree." And the court further charged: "Stated another way, Gentlemen, the State does not have to prove anything more than a killing with a deadly weapon in this case. If it does that beyond a reasonable doubt, then it has no further burden. The burden is then upon the defendant to reduce it by satisfying you of a lack of malice, or to absolve himself by satisfying you that the killing was done in self-defense."

Exceptions 11 and 12 are directed to the above portions of the charge. It is contended his Honor committed reversible error in omitting the word "intentional" in connection with the charge on the presumption raised by a killing with a deadly weapon.

Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. And an intentional killing with a deadly weapon raises two presumptions: first, that the killing was unlawful; and second, that it was done with malice. *S. v. Robinson,* 188 N.C. 784, 125 S.E. 617.

There are circumstances under which it would be error to charge that a killing with a deadly weapon raises the presumption that the killing was unlawful and that it was done with malice. *S. v. Burrage,* 223 N.C. 129, 25 S.E. 2d 393; *S. v. Debnam,* 222 N.C. 266, 22 S.E. 2d 562; *S. v. Gregory,* 203 N.C. 528, 166 S.E. 387. It must be noted, however, that his Honor instructed the jury that "the State does not have to prove anything more than a killing with a deadly weapon *in this case."* The defendant had stated to numerous persons that he shot the deceased, he so testified on direct and cross-examination, but claimed he did so in self-defense; and the case was tried on that theory. *S. v. Davis,* 223 N.C. 381, 26 S.E. 2d 869; *S. v. Utley,* 223 N.C. 39, 25 S.E. 2d 195. When one kills another with a deadly weapon, in the absence of evidence to the contrary, it will be presumed "that he did so intentionally, since all persons are presumed to intend the consequences of their acts." *S. v. Wallace,* 203 N.C. 284, 165 S.E. 716. Therefore, upon the facts in this case the exceptions are feckless.

The defendant also excepts and assigns as error the following portion of the charge: "The Court instructs you further, Gentlemen of the Jury, that if you find beyond a reasonable doubt that defendant shot and killed the deceased but find that at the time of so doing that the defendant was not actuated by malice towards the deceased but that he was acting hastily and without just cause, that he then inflicted the wound that caused the death of the deceased, then, Gentlemen of the jury, upon that finding, the defendant would be guilty of manslaughter."

The defendant contends this instruction took away from the jury the right to consider his plea of self-defense. This contention is untenable; for immediately after giving the above instruction, the court gave a full and proper charge on the defendant's plea of self-defense.

Likewise, the defendant assigns as error the following excerpt from the charge: "If you find, Gentlemen of the Jury, and you are satisfied that the defendant acted with malice in the matter, and that it was not necessary for him to shoot and kill the deceased, and it was not apparently necessary, but that he did it in the heat of passion so to speak, then, Gentlemen of the Jury, the defendant would be guilty of manslaughter, and it would be your duty to render a verdict accordingly."

Here the court charged the jury "if . . . you are satisfied that the defendant acted with malice," etc., instead of charging them if you are satisfied *beyond a reasonable doubt,* etc. The complaint here is to the measure or *quantum* of proof required for conviction. Standing alone and detached from the remainder of the charge the exception would be well taken. But in each of the five paragraphs of the charge immediately preceding the one complained of, instruction as to the burden of proof was correctly given. And the instructions given related to murder in the second degree, manslaughter and the defendant's plea of self-defense. Moreover, this portion of the charge was primarily directed to a mitigating circumstance which if found to the satisfaction of the jury, would rebut or displace the presumption of malice and reduce the crime to manslaughter. *S. v. Baldwin,* 152 N.C. 822, 68 S.E. 148; *S. v. Kennedy,* 169 N.C. 288, 84 S.E. 515; *S. v. Terrell,* 212 N.C. 145, 193 S.E. 161. Consequently, when the charge is considered contextually, the lack of exactitude in the instruction complained of is insufficient to show reversible error.

Moreover, all the exceptions to the charge, except the last two discussed herein, are directed to the court's charge on murder in the second degree and not manslaughter; and since the defendant was convicted of manslaughter and not murder in the second degree, no error has been shown of sufficient merit to warrant a new trial.

We have carefully examined the remaining assignments of error and they are without merit.

It would seem the defendant's own testimony was sufficient to warrant the verdict rendered below. *S. v. Marshall,* 208 N.C. 127, 179 S.E. 427. In the trial below, we find
No error.