## STATE v. BOBBY SPENCER.

(Filed 17 March, 1954.)

**1. Criminal Law § 47—**

Indictment was returned against one defendant charging him with murder in the first degree of a named person and another indictment was returned against two other defendants charging them with murder in the

first degree of the same person and on the same date. The State was relying upon the same set of facts at the same place and time as against each of the defendants.  *Held:* The trial court had authority to consolidate the indictments for trial.  G.S. 15-152.

### 2. Criminal Law § 50g—

Upon motion of defendants the court ordered the segregation of witnesses for the State.  Upon motion of the solicitor, the court then ordered the segregation of defendants' witnesses over defendants' objection that they might rely on the weakness of the State's case and call no witnesses, or would not know who their witnesses would be until the State rested.  *Held:* The order for the segregation of defendants' witnesses rested in the sound discretion of the trial judge, and no abuse of discretion being made to appear in this case, exception is not sustained.

### 3. Criminal Law §§ 50e (1), 57a: Statement of prospective witness in hearing of jury held insufficient to justify order of mistrial.

During the course of the trial, a person who had been sworn as a witness for defendant upon the court's order for the segregation of witnesses, came into the courtroom in the absence of the judge while the jury was still in the box and said in a loud voice to one of the attorneys for defendant that she didn't know anything about the case and that he would be sorry if he put her on the stand.  Upon the court's later inquiry as to whether any of the jurors had heard the remark, only two of them stated that they had, and upon interrogation by the court the one juror who stated that the occurrence might have some bearing on his consideration of the case, nevertheless stated that he could hear the evidence and the charge of the court and return a verdict uninfluenced by the witness' statement.  *Held:* The competency of the jurors is a question of law for the court, G.S. 9-14, and the occurrence was insufficient to justify the withdrawal of a juror and order of mistrial, and therefore defendants' exception to the refusal of the court to do so is not sustained.

### 4. Homicide § 25—

The State's evidence tended to show that appealing defendant had an altercation with deceased, that he and his two codefendants left the cafe where the altercation had occurred and returned thereto in about 30 minutes, that one of defendants was armed with a pistol, that the three defendants entered the cafe together and gathered round the deceased, and that one defendant shot deceased while the appealing defendant and the other defendant were physically and violently aiding and abetting the assault.  *Held:* The evidence was sufficient to overrule appealing defendant's motion to nonsuit.

### 5. Criminal Law § 8b—

When two or more persons aid and abet each other in the commission of a felony, all being present, all are principals and equally guilty without regard to any previous confederation or design.

### 6. Homicide § 27d—

The court's definition of malice in this homicide prosecution *is held* without error on authority of *S. v. Benson,* 183 N.C. 795.

**7. Homicide § 27g: Conspiracy § 3—**

In this prosecution for homicide there was evidence that the three defendants aided and abetted each other in the commission of the crime, all being present, and also some evidence that the crime was committed pursuant to a conspiracy. The court correctly charged on the question of conspiracy and also on the principle of the guilt of defendants as principals. *Held:* On the aspect of defendants' guilt as principals, the court correctly charged that the jury could convict any one or all of them.

APPEAL by defendant Bobby Spencer from *Williams, J.,* November Term 1953. HARNETT. No error.

This is a criminal action. The grand jury of Harnett County Superior Court properly returned in open court a bill of indictment charging John Spencer on 9 January 1953 with murder in the first degree of Thurman McNeill. The said grand jurors duly returned in open court another bill of indictment charging Lacy Murchison and Bobby Spencer on the same date with murder in the first degree of the same person. Upon motion of the Solicitor for the State, and over the objection and exception of the defendant Bobby Spencer, the court ordered a consolidation of the two bills of indictment for trial. Each defendant pleaded Not Guilty.

The State's evidence tended to show the following facts. About 9:30 or 10:00 p.m. on 9 January 1953 Thurman McNeill, the deceased, entered a cafe in the Town of Lillington operated by his brother. The cafe consisted of two rooms. There is no door between the rooms—only an open space. In one room there was a piccolo and a heater; in the other a refrigerator, a sink, two tables, chairs and a shelf with candy and other things for sale. When Thurman McNeill came in the cafe, his sister Dorothy, who worked there, Willard Pearson, Lacy Murchison, one of the defendants, Bobby Spencer, one of the defendants, Rufus Stokes and Snooks Ferrell were there. The defendant John Spencer was either present when Thurman McNeill arrived, or came in shortly thereafter. Several other persons came in soon after Thurman McNeill.

In the cafe Snooks Ferrell and Rufus Stokes were wrestling, or trying to wrestle. Thurman McNeill pulled one back. The defendant Bobby Spencer asked Thurman McNeill what he had to do with it, and they cursed each other about five minutes. Then Bobby Spencer told Thurman McNeill if he wanted to fight, to come outside. They went out. There was no fight outside. In a few minutes Thurman McNeill and the others came in. Then the defendants John Spencer, Lacy Murchison, Bobby Spencer and Snooks Ferrell left the cafe. In about 30 minutes the three defendants and Snooks Ferrell returned. Thurman McNeill was standing near the piccolo. John Spencer entered first. He had a pistol in his right front pocket with his hand on the handle. Lacy Murchison, Bobby

Spencer and Snooks Ferrell followed him in. The three defendants gathered around Thurman McNeill at the piccolo.

Dorothy McNeill, a witness for the State, testified when the three defendants gathered around the deceased she saw a knife go up, and come down on the deceased's head. She did not know which defendant had the knife. She saw John Spencer have a pistol in his hand pointed at the deceased. She started for help. When she had gone three feet from the door, she heard a pistol fire. She went back to the door, and saw the deceased down on his knees, and John Spencer standing over him holding a pistol. She asked John Spencer did he shoot Thurman McNeill, and he replied Yes.

Clyde Sanford, a witness for the State, testified he saw John Spencer walk up to deceased at the piccolo, and slap him. John Spencer then put his hand on the deceased's shoulder, snatched him around, and hit him in the face: he had the deceased in the collar, and put the pistol in his face. While John Spencer had the deceased in the collar and his pistol in the deceased's face, the defendants Lacy Murchison and Bobby Spencer caught the deceased by his shoulder, and hit him three or four times on the side of his head. The deceased was doing nothing but begging them to leave him alone. Clyde Sanford at this time left the room. When Sanford had gone two steps in the other room, he heard a pistol shot. He turned around, and saw the deceased down on his knees holding his stomach, and John Spencer standing over him holding a pistol pointing towards him. Lacy Murchison and Bobby Spencer were standing behind John Spencer.

A pistol bullet penetrated Thurman McNeill's body going through the abdomen. He also had a scalp wound on his head, which was sewed up. Four days later Thurman McNeill died. The bullet wound produced peritonitis, which caused his death.

The defendants offered no evidence.

The jury returned a verdict of guilty as to all three defendants of murder in the second degree.

Judgment of the court: imprisonment in the State's prison as to each defendant.

Each of the defendants entered appeal entries in open court when judgment was pronounced. The defendant Bobby Spencer alone perfected his appeal, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Doffermyre & Stewart for defendant, appellant.*

PARKER, J. The defendant assigns as error the consolidation for trial of the two bills of indictment. This Court said in *S. v. Combs,* 200 N.C.

671, 158 S.E. 252: "The court is expressly authorized by statute in this State to order the consolidation for trial of two or more indictments in which the defendant or defendants are charged with crimes of the same class, which are so connected in time or place as that evidence at the trial of one of the indictments will be competent and admissible at the trial of the others." G.S.N.C. 15-152.

The three defendants were charged with participating in the same crime as principals. The State relied upon the same set of facts at the same place and time as against each defendant. The consolidation was proper. It prevented two trials involving the same facts. *S. v. Davis,* 214 N.C. 787, 1 S.E. 2d 104 (consolidation for trial of three warrants—each warrant issued against one defendant—charging each defendant as a principal with the unlawful possession and transportation of intoxicating liquor) ; *S. v. Jackson; S. v. Blackwell,* 226 N.C. 760, 40 S.E. 2d 417 (consolidation for trial of three separate indictments against three defendants relating to one felonious assault).

The appellant in his brief in respect to the above assignment of error cites only an excerpt from *S. v. Norton,* 222 N.C. 418, 23 S.E. 2d 301, which deals with the lower court's charge to the jury. In that case this Court held the consolidation for trial of the two indictments had statutory authority. G.S.N.C. 15-152.

The defendant's second assignment of error, based on his exception No. 2, is to the trial court's segregation of his witnesses. Each defendant moved that the State's witnesses be segregated during the trial. The court allowed the motion. The solicitor for the State then moved that the defendants' witnesses be segregated. The defendants objected. Their counsel stated to the court, we do not know at this time whether we will have any witnesses or not; we might rely upon the weakness of the State's case; at this time, we do not know who our witnesses will be; we have only two under subpoena; we feel that it would be prejudicial to be forced to have any prospective witnesses called and sworn in the presence of the jury, until the State has rested. The court said it would not permit any witnesses to testify in the case who were present in court after the evidence began, and directed the defendants to call their witnesses and have them sworn. Whereupon several were sworn—one of whom was Annie Lee Hodges. Each defendant objected and excepted.

The defendant in his brief combined his second assignment of error with his ninth assignment of error, based on his exception No. 17. His exception No. 17 is based on these facts. One afternoon during the trial immediately after the judge had left the courtroom, and while the jury was in the jury box, Annie Lee Hodges came into the bar, and in a loud tone of voice said to Mr. Doffermyre, one of the defendant's counsel, "I told Mr. Hooks (solicitor for the State) I don't know anything about this

case. If you put me on the stand, you will be sorry." The next day when court convened counsel for defendant, in the absence of the jury, brought this to the attention of the judge by the testimony of the Clerk of the Court. Then Mr. Doffermyre stated to the judge that he had never seen Annie Lee Hodges before. Whereupon the defendants, and each of them, moved that a juror be withdrawn and a mistrial ordered.

The judge then ordered the jury to be brought into the courtroom. The judge inquired if any of the jury heard what Annie Lee Hodges said to Mr. Doffermyre. One juror replied he heard a girl he did not know, inquire of Mr. Doffermyre why she was sworn as a witness, and say "you had better not put me on the stand," and that was all he heard.

Another juror by the name of Tudor replied he heard the same thing, and heard her say she told Mr. Hooks she knew nothing about the trial, and didn't know why she was called. The judge then asked Tudor did he consider that would affect his consideration of the case. . Tudor replied it might have some bearing on it; of course, I haven't heard all the evidence. The judge said that is not evidence. Tudor replied, I realize that. The judge: do you consider that would prejudice you in any way against either of the defendants? Tudor: well, I can't help from feeling it would have some bearing; if there was some doubt in my mind, that would add to it. The juror Tudor then stated in response to questions by the judge that he could sit in the jury box, and hear the evidence in the case and the charge of the court, and return a verdict uninfluenced by anything he had heard, except the evidence and the charge. The judge then stated: "Gentlemen, the Court holds the juror is impartial." The court denied the motion to withdraw a juror, and order a new trial. The defendants, and each of them, excepted.

The defendant contends that the manner in which his witnesses were segregated, the words of Annie Lee Hodges before the jury, and the judge's interrogations of the jurors as to the language of Annie Lee Hodges were highly prejudicial. And further that the other ten members of the jury were not given an opportunity to say whether they heard the remarks of Annie Lee Hodges, and if so, were they influenced thereby.

This jurisdiction, and the great majority of jurisdictions, follow the early English rule that the segregation, separation, exclusion of witnesses, or "putting witnesses under the rule," as the procedure is variously termed, is a matter not of right, but of discretion on the part of the trial judge. The exercise of such discretion is not reviewable, except in cases of abuse of his discretion. *S. v. J. H. Hodge,* 142 N.C. 676, 55 S.E. 791; *S. v. Lowry,* 170 N.C. 730, 87 S.E. 62; *Lee v. Thornton,* 174 N.C. 288, 93 S.E. 788; 53 Am. Jur., Trial, Sec. 31. The State moved "to put the defendants' witnesses under the rule" only after the court had granted a

similar motion of the defendants to exclude the State's witnesses. No abuse of the trial judge's discretion appears.

The evidence in the Record does not bear out the defendant's contention that the other ten members of the jury were not given an opportunity by the court to say whether they heard the remarks of Annie Lee Hodges, and if so, were they influenced by them. The judge asked the jury twice, if any of them had heard the words of Annie Lee Hodges. Only two said they had. The other ten could have spoken up in response to the two questions, if they had heard her remarks.

The juror Tudor stated to the court that he could hear the evidence and the charge of the court, and return a verdict uninfluenced by anything he had heard except the evidence and the charge. That suffices to support the court's finding that Tudor was impartial or indifferent. S. v. DeGraffenreid, 224 N.C. 517, 31 S.E. 2d 523; S. v. Foster, 172 N.C. 960, 90 S.E. 785; S. v. English, 164 N.C. 497, 80 S.E. 72; S. v. Banner, 149 N.C. 519, 63 S.E. 84.

G.S.N.C. 9-14 provides that the judge "shall decide all questions as to the competency of jurors," and his rulings thereon are not subject to review on appeal, unless accompanied by some imputed error of law. The ruling in respect of the impartiality of the juror Tudor presents no reviewable question of law. S. v. DeGraffenreid, supra; S. v. Bailey, 179 N.C. 724, 102 S.E. 406; S. v. Bohanon, 142 N.C. 695, 55 S.E. 797.

According to the Record only one other juror spoke up. He stated he heard a girl he didn't know inquire of Mr. Doffermyre why she was sworn as a witness, and say he had better not put her on the stand. It would seem that the hearing of such remark was not prejudicial. Upon the evidence in the Record sufficient facts were not shown to withdraw a juror, and order a mistrial in this capital case. S. v. Crocker, ante, p. 446, 80 S.E. 2d 243; S. v. Suddreth, 230 N.C. 239, 52 S.E. 2d 924; S. v. Hart, 226 N.C. 200, 37 S.E. 2d 487; S. v. Hawkins, 214 N.C. 326, 199 S.E. 284; S. v. Plyler, 153 N.C. 630, 69 S.E. 269; S. v. Boggan, 133 N.C. 761, 46 S.E. 111; S. v. Kinsauls, 126 N.C. 1095, 36 S.E. 31; S. v. Brittain, 89 N.C. 481. See also S. v. Burton, 172 N.C. 939, 90 S.E. 561 (trial for second degree murder; remark to jury by officer having them in charge that the judge would keep them until Sunday, though authorized by judge, held not reversible error); S. v. Jackson, 112 N.C. 851, 17 S.E. 149 (indictment for larceny; before jury impaneled, but in their presence, a bystander remarked in open court that the defendant's wife said she would not come because she would only help get her husband in jail. This Court said "this can be no ground for exception.").

The defendant's assignments of errors Nos. Two and Nine are overruled.

The defendant's tenth assignment of error is to the refusal of the court to grant his motion for judgment of nonsuit made at the close of the evidence. The State offered evidence tending to show that the defendant Bobby Spencer had had an altercation with the deceased; that he and his two codefendants left the cafe, and returned together in about 30 minutes; that the defendant John Spencer was armed with a pistol; that the three defendants entered the cafe together and gathered around Thurman McNeill at the piccolo; and that the defendants Bobby Spencer and Lacy Murchison were physically and violently aiding and abetting the defendant John Spencer in the murder of Thurman McNeill. It is thoroughly established law in North Carolina that without regard to any previous confederation or design, when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty. *S. v. Jarrell,* 141 N.C. 722, 53 S.E. 127; *S. v. Hart,* 186 N.C. 582, 120 S.E. 345; *S. v. Beal,* 199 N.C. 278, 154 S.E. 604; *S. v. Donnell,* 202 N.C. 782, 164 S.E. 352; *S. v. Gosnell,* 208 N.C. 401, 181 S.E. 323; *S. v. Brooks,* 228 N.C. 68, 44 S.E. 2d 482; *S. v. Church,* 231 N.C. 39, 55 S.E. 2d 792. The court was correct in overruling the motion for judgment of nonsuit.

The defendant assigns as error the court's definition of malice in its charge. In defining malice the court used the same words that *Stacy, C. J.,* did in defining malice in *S. v. Benson,* 183 N.C. 795, 111 S.E. 869— words that have been cited by us many times since with approval. This assignment of error is without merit.

The defendant assigns as error that the court charged the jury "you may convict all, or you may acquit all, or you may convict one or more and acquit the others, or you may acquit one or more, and convict one or more, etc." The contention being that the court charged the jury that the State contended that the three defendants entered into a conspiracy to murder Thurman McNeill, and that in the execution of the conspiracy all three defendants gathered around the deceased and Lacy Murchison and Bobby Spencer aided and abetted John Spencer in murdering Thurman McNeill, and that "any instruction other than all defendants must either be found guilty or all not guilty was error." The defendant cites one authority in his brief in support of his argument: *S. v. Brown,* 204 N.C. 392, 168 S.E. 532, which case does not support his contention.

The court in addition to charging in respect to a conspiracy, also charged the jury correctly and at length as to the principle of law that when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty. The defendants were not on trial for conspiracy: they were on trial for murder. The court's charge in respect to a conspiracy in this case is free from reversible error. *S. v. Donnell, supra.* Without regard to any

previous confederation or design when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty. To illustrate: if the jury had found beyond a reasonable doubt that John Spencer was guilty of the murder of Thurman McNeill, and if the jury had had a reasonable doubt that Lacy Murchison and Bobby Spencer were guilty of aiding and abetting John Spencer in the murder of Thurman McNeill, it would have been their duty under those circumstances to convict John Spencer and acquit Lacy Murchison and Bobby Spencer. This assignment of error is overruled. See *S. v. Ford*, 175 N.C. 797, p. 804, 95 S.E. 154.

We have examined the defendant's other assignments of error, and find them without merit.

The case was fairly and ably tried by the experienced judge below, and we find it free from error. The last words spoken by the judge to the jury in his charge were that the jurors were to banish from their minds as completely as if it had never taken place what Annie Lee Hodges said to Mr. Doffermyre, and that their verdict was to be based solely upon the evidence they had heard and the charge of the court. The defendant must abide by the verdict and judgment imposed thereon. From the evidence in the Record it would seem that the jury could have returned a verdict for the capital charge.

No error.