STATE OF NORTH CAROLINA v. CLARENCE E. GIBBS

No. 6914SC332

(Filed 23 July 1969)

**1. Constitutional Law § 29—  right to unbiased jury — acquaintance with member of deceased's family**

In this homicide prosecution, defendant's right to a fair and unbiased jury was not violated by refusal of the trial court to allow defense counsel to ask further questions of a juror who, having answered negatively a *voir dire* question as to whether he knew any member of deceased's family and been passed by the State and defendant, stated that it occurred to him that deceased's mother had nursed his mother-in-law while she was a hospital patient, but that his decision in the case would not be affected thereby.

**2. Homicide § 19—  self-defense — evidence of specific acts of violence by deceased**

In this homicide prosecution wherein defendant contended he shot deceased in self-defense, the trial court did not commit reversible error in the exclusion of testimony as to specific instances of violence by deceased, where there is no evidence that defendant had knowledge that any violence toward the witness was at the hands of deceased, and defendant failed to question the witness further as to any specific acts of violence although invited by the trial court to propound questions to the witness so the court could rule thereon and the answers thereto could be gotten into the record.

**3. Homicide § 21—  first degree murder — sufficiency of evidence**

Evidence of the State tending to show that defendant intentionally shot

deceased seven times *is held* sufficient to be submitted to the jury as to defendant's guilt of first degree murder.

**4. Homicide § 28— instructions on self-defense**

> In this homicide prosecution, the trial court adequately instructed the jury on self-defense and committed no prejudicial error in the charge.

APPEAL by defendant from *Brewer, J.*, 24 February 1969 Criminal Session, Superior Court of DURHAM.

Defendant was charged, in a valid bill of indictment, with the murder of Gaylon Norwood Stewart. The offense occurred on 26 January 1969. A true bill was returned by the grand jury on 27 January 1969, and counsel was appointed for defendant, pursuant to a stipulation of indigency, on 28 January 1969. Defendant was found guilty of second-degree murder. In apt time, through counsel, he gave notice of appeal.

*Attorney General Robert Morgan by Staff Attorney T. Buie Costen for the State.*

*C. Wallace Vickers for defendant appellant.*

MORRIS, J.

**[1]** During the selection of the jury, the seventh juror, who had been passed by both defendant and the State, requested permission to make a statement to the court with respect to a question asked him on *voir dire* examination the previous day. It appears from the record that the juror had been asked whether he knew the deceased or any member of his family and had answered the question "No". He stated that during the night it had occurred to him that the mother of the deceased had at one time nursed his mother-in-law while she was a patient in the hospital. He further stated, on questioning by the court, that that fact would not affect his decision in any way but he simply wanted to clear the record. The court refused to allow counsel for defendant to ask any further questions of the juror. The record is silent as to what the questions would have been. Defendant contends that the refusal of the court to allow further questioning of this juror by defendant constitutes reversible error and cites *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481, where the Court said, "Each party to a trial is entitled to a fair and unbiased jury." We fail to see where this unquestionably correct principle of law has been violated in this case. It is provided by G.S. 9-14 that "[t]he presiding judge shall decide all questions as to the competency of jurors." "[H]is rulings thereon are final and not subject to re-

view on appeal unless accompanied by some imputed error of law". *State v. Suddreth*, 230 N.C. 239, 52 S.E. 2d 924. This assignment of error presents no reviewable question of law and is, therefore, overruled.

[2] Defendant also contends that the trial judge committed reversible error in refusing to allow evidence of specific instances of violence on the part of deceased. Defendant contends that he shot deceased in self-defense. Counsel for defendant in questioning a witness for defendant asked "Did you know Mr. Stewart to be a violent person?" The court sustained the State's objection. The witness, nevertheless, answered "Yes", and the State moved to strike. Whereupon, defendant requested that he be heard in the absence of the jury. The court ruled that the witness could testify as to deceased's reputation for violence in the community and not specific instances of violence. Defendant then, in the absence of the jury, proceeded to question the witness as to deceased's violent nature. In response, the witness testified "Yes, sir, when he was drinking, he was very violent, because on occasions, he had come to my house and he has beat me, and I went to Duke Hospital, and Mr. Gibbs has seen me with the whole side of my head black from where he had — I mean just out of the blue sky, for no reason at all, and then I learned he was married and I wouldn't date him any more, and I told him that." At the conclusion of the *voir dire*, the court again ruled the witness could testify as to the reputation of the deceased for being a violent and dangerous man but was not to mention any specific episode of which she might have knowledge. Counsel for defendant asked for an exception. "THE COURT: You may ask your question, and I will rule on it out of the presence of the jury." The jury returned and counsel for defendant asked only one question: "Mrs. Perry, does Gaylon Stewart have the reputation of being a violent and dangerous person? Answer: Yes, sir."

There is no evidence, either in the presence of the jury or out of the presence of the jury, that the defendant had knowledge that any violence toward the witness was at the hands of deceased. *Nance v. Fike*, 244 N.C. 368, 93 S.E. 2d 443; Stansbury, N.C. Evidence 2d, § 106. Additionally, although invited by the trial court to propound questions to the witness so the court could rule thereon and the answers thereto could be gotten into the record, the defendant failed to question the witness further as to any specific instances of violence. This assignment of error is overruled.

[3] Defendant further contends that there was not sufficient evidence for the jury to consider either first-degree or second-degree

murder. The evidence, taken in the light most favorable to the State, tends to show: At about 11 o'clock on the night of the homicide deceased and one Riley went to a house wherein defendant operated a barroom. Defendant was behind the bar. Deceased ordered two drinks, one for him and one for Riley, which were fixed by defendant. While standing at the bar drinking and talking with other customers, deceased took defendant's hat from his head. Defendant retrieved it. Deceased moved behind the bar. He was told by defendant "Don't mess with my hat" and defendant also said "Please get out from behind the bar" and "if you don't, I'll have to shoot you". Deceased continued to reach for defendant's hat whereupon defendant pulled a chrome plated pistol from his hip pocket. The witness Riley asked defendant not to shoot, to give him time and he would get deceased from behind the bar. He reached for deceased's arm, heard a shot and turned and ran out the room. When he heard nothing further he turned and went back into the room. Defendant was by the cash register with his back to the witness as witness re-entered the door. Deceased was by the refrigerator. Defendant turned and had a black colored pistol in his hand. Witness hollered "For God's sake, please don't. If you'll just let me, I'll get him out of the house." Whereupon defendant said "I'm going to show him he can't mess with my hat." He then shot one time at deceased. Witness turned and ran back in the hall. He heard a series of shots, went back in the room, and deceased was staggering by the refrigerator to the end of the bar where he fell with his head in the hallway. Witness further testified that before the first shot was fired, when defendant had a pistol in his hand, deceased was facing defendant with his hands up in the air and, after the first shot, said to defendant "Please don't, it's not necessary." After the shooting witness asked defendant to call an ambulance. He replied "If you want to call an ambulance, you call it." Deceased was a man of 46 years of age, of average physique, muscular, weighing between 205 and 210 pounds, who had had a heart attack about five years previously. There was evidence tending to show that defendant is about six feet four inches tall, weighs approximately 260 pounds, and on occasion has suffered from arthritis to the extent that he had to use crutches. There were seven gunshot wounds in deceased's body — four on the front of his body and three on his right side. The most severe of the wounds and the one which was the primary cause of death entered his right side piercing his heart and lung. One of the wounds was in his right elbow. The evidence was uncontradicted that deceased had no weapon.

We think the evidence is amply sufficient to take the case to the

jury on first-degree murder. Any inconsistencies and contradictions therein were for the jury.

[4]    Defendant's remaining assignment of error is to the charge. Defendant contends that the court failed to instruct the jury that defendant may justify the use of a deadly weapon when assaulted by a person of greater strength, although such person be unarmed, and that defendant in his own home is under no duty to retreat but was justified in using such force as the violence of the attack warranted. Viewing the charge as a whole in the light of the evidence in this case, we are of the opinion that the court adequately charged the jury on self-defense and committed no prejudicial error.

Affirmed.

CAMPBELL and BROCK, JJ., concur.