STATE OF NORTH CAROLINA v. JAMES EARL GRANT, JR., 72-CR-1180; CHARLES PARKER, 72-CR-1187; THOMAS JAMES REDDY, 72-CR-1188

No. 7326SC631

(Filed 19 September 1973)

1. Constitutional Law § 29; Jury § 5— jury selection — no denial of constitutional rights

There was no violation of any of the constitutional rights of the defendants in the jury selection process where defendants presented no evidence which demonstrated any discrimination against them by reason of race, economic status, or age group, and there was no evidence of any arbitrary or systematic exclusion from the jury of any segment of the citizenship of the county.

2. Jury § 7— denial of challenge for cause — review

Trial court's decision refusing to permit defendants to challenge two jurors for cause was final and not subject to review on appeal where it was unaccompanied by any error of law; moreover, defendants

State v. Grant

were not prejudiced by the denial since both of the jurors challenged for cause were eventually excused by peremptory challenges and did not serve.

**3. Criminal Law § 21— no preliminary hearing as matter of right**

A preliminary hearing is not an essential constitutional step in a criminal process before there can be prosecution under a valid bill of indictment.

**4. Arson § 3; Criminal Law § 33— meetings of defendants — proceedings at meetings — competency of evidence in arson trial**

In a prosecution for the felonious burning of a barn, testimony that prior to the time of the alleged crime defendants met together and discussed the problems of black people in their city and the use of "revolutionary tactics" to deal with those problems, that at those meetings defendants smoked marijuana and that they conducted instruction sessions in the use of firearms and firebombs commonly identified as "Molotov Cocktails" was properly admitted since it showed motive and intent.

**5. Criminal Law § 85— specific character traits of defendant — evidence inadmissible**

Trial court properly sustained objection to an inquiry about specific character traits of defendant and directed the jury to disregard the answer of the witness.

**6. Criminal Law § 85— evidence of defendant's character — limitation not prejudicial**

Where a character witness for defendant was not permitted to elaborate at length upon his opportunities to observe defendant and know his character, but several witnesses were permitted to testify that defendant's character was good, defendant was not prejudiced even if the examination of the witness was improperly limited.

**7. Criminal Law § 88— cross-examination to show bias — no error**

Trial court did not err in allowing the solicitor to ask questions intended to point out the bias of the witnesses.

**8. Criminal Law § 87— leading questions by solicitor — no error**

Trial court did not abuse its discretion or defeat the purpose of sequestration of the State's witnesses where the court allowed leading questions to be put to the witnesses.

**9. Criminal Law § 43— motion picture of burning stable — admissibility**

In a prosecution for the felonious burning of a stable where a witness testified that a motion picture fairly and accurately depicted the fire but that it was not identical to what he saw because it appeared to have been taken about two minutes before he arrived at the stable, the film was properly authenticated and admitted into evidence.

**10. Criminal Law § 169— failure of defendant to argue objection — no prejudice**

Defendant was not prejudiced where his counsel objected to the questioning of a witness, requested permission to present his argument

State v. Grant

in the absence of the witness, was denied his request and therefore made no argument.

**11. Criminal Law § 99— expression of opinion on evidence**

The trial court did not express an opinion in violation of G.S. 1-180 by several times sustaining objections to defendants' questions and saying to defense counsel, "He has answered your question."

**12. Criminal Law § 9— aiding and abetting — sufficiency of instruction**

Trial court's instructions that "to find defendant . . . guilty of felonious burning because of aiding and abetting, the State must prove beyond a reasonable doubt . . . that, if he was not actually on the scene, as the evidence tends to show, that he shared the criminal purpose of the other persons and, to their knowledge, was aiding them or was in a position to aid them at the time the crime was committed," and that defendant "must aid or actively encourage the person or persons committing the crime or in some way communicate to this person or persons his intention to assist in its commission" were proper statements of the law.

**13. Criminal Law § 116— charge on defendant's failure to testify — no error**

In the absence of a request from the defendant it is preferable for the court to omit any reference or implication concerning the failure of the defendant to testify; however, the court's reference in this case, even if technically erroneous, was harmless error beyond a reasonable doubt.

**14. Criminal Law § 113— alibi instruction — sufficiency as to one defendant — necessity as to another defendant**

Trial court's instruction with respect to alibi of one defendant was proper, but a second defendant who merely denied his presence at the crime scene, yet introduced no evidence as to his whereabouts at the time of the alleged crime, was not entitled to an alibi instruction.

**15. Criminal Law § 114— jury instructions — no expression of opinion**

Though the trial judge devoted more time to the State's evidence than to that of defendants, he did so because the State presented far more evidence, and his summary of the evidence was fair, accurate, and showed no bias in favor of either the State or the defendants.

**16. Criminal Law § 138— severity of sentence — consideration of defendants' backgrounds proper**

Trial court's sentencing procedure for defendants was proper where, prior to sentencing, the judge requested and was given information concerning the personal history and background of each defendant in an effort to arrive at a sentence which would punish defendant for his wrongful conduct, deter others from committing future crimes, and afford the defendant an opportunity for rehabilitation.

On *certiorari* granted upon petition of defendants to review trial before *Snepp, Judge,* 10 July 1972 Session of Superior Court held in MECKLENBURG County.

Defendants, James Earl Grant, Jr., Thomas James Reddy, and Charles Parker, were charged in separate bills of indictment, proper in form, with the felonious burning of a barn at the "Lazy B Riding Stables" in Charlotte, North Carolina on 24 September 1968.

Prior to the call of the cases for trial, defendants Grant and Reddy made the following motions: (1) Motion to quash bill of indictment because the grand jury was selected in a manner which excluded members of defendants' race and economic class and young persons between the ages of 18 and 21 and failed to represent a cross-section of the community in violation of rights secured to defendants by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article 1, Section 19, of the Constitution of the State of North Carolina. (2) Motion to quash venire of petit jurors for the same reasons set out above. (3) Motion to dismiss indictment, grant a preliminary hearing, and restrain the prosecution from proceeding to trial until such preliminary hearing was had and determined. (4) Motion for production of all the State's evidence and witnesses for examination and interview by the defendants. Defendant Parker joined in the latter two motions.

These motions were considered at pretrial hearings on July 6, 7 and 10 when testimony was heard particularly with respect to the procedure employed in determining the jury list from which both the grand jury and petit jury were selected. The court found extensive facts concerning the procedure utilized by the 1972-73 Jury Commission of Mecklenburg County, which was composed of two black citizens and one white citizen, and determined that defendants had shown no systematic exclusion of members of any race, economic status, or age group from the jury list and that there was no discrimination in the selection of members of the grand jury or petit jury which violated any of defendants' constitutional rights. The motions of defendants to quash the indictments, to quash the venire of petit jurors, and to grant a preliminary hearing were denied. The motion for production of evidence was granted in large part, and the State was required to furnish counsel for defendants copies of any written or recorded statements and the substance of any oral statements of State's witnesses, copies of any scientific or other tests intended to be offered in evidence, copies of any investigation reports by any agent of the

government, copies of any prior conviction record of any of State's witnesses, and any information in possession of the State which might be exculpatory of the defendants, and de- fendants were permitted to inspect any physical evidence which the State intended to introduce at the trial.

On 10 July 1972 upon motion of the State and without objection from defendants the cases against all defendants were consolidated for trial. Each defendant entered a plea of not guilty, and the case was tried before a jury.

The State presented evidence which tended to show the following:

A group of young black men known as "The United Souls" met upon several occasions in September 1968 at the Tenth Street Recreation Center in Charlotte, which was operated by defendants, T. J. Reddy and Charles Parker. During these meetings the group discussed the problems of black people in Charlotte, distributed pamphlets, went out to Gold Mine Road to engage in target practice with rifles furnished by the de- fendant Grant, and received instruction and demonstrations in the use of firebombs known as "Molotov Cocktails." The State's witnesses testified that Grant told them that he had a Ph.D. in chemistry and could make firebombs. The witness Hood saw Grant bring one of the firebombs out of the bath- room and saw it later thrown by defendant T. J. Reddy when it exploded out in a field.

On 24 September 1968 at about 7:00 p.m., defendants and the State's witnesses Hood and Washington and one Clarence Harrison met at the Tenth Street Recreation Center. Reddy and Parker reported that the Lazy B Stables had refused to rent horses to them because they were black. It was then decided to go out to the Lazy B Stables and burn the barn. Reddy drew a map of the premises showing the location of the house and barns. Grant mixed chemicals in the bathroom, poured them into beer bottles, inserted rags in the top for use as wicks, and prepared them as firebombs. Reddy carried a gasoline can, and Parker had two of the beer bottle firebombs filled with liquid. Grant furnished rifles to Hood, Washington, and Harrison who were to act as lookouts. When they were prepared, they proceeded to the Lazy B Stables area in two cars. Reddy, Parker, Washington and Hood rode in Reddy's green Falcon and Grant and Clarence Harrison rode in a white Mercury. They parked in a private parking lot in the vicinity

of the Lazy B Riding Stables.  Grant did not get out of the car.  Reddy and Parker picked up the cans and bottles and Reddy directed Hood and Washington to take lookout positions. Shortly after Reddy and Parker went toward the Lazy B barn the State's witness Washington saw Reddy with the gasoline can sprinkling the contents on the straw in the barn.  He saw Parker light the wick in the beer bottle firebomb and throw it. Both Hood and Washington testified that they saw flames coming from the barn and they all ran toward the parking lot where Grant was waiting for them.  Grant made some comment about the fact that it was a good job.  The Lazy B Riding Stables' barn and contents were totally destroyed resulting in the death of fifteen horses.

Defendant Reddy testified and denied participation in the crime.  The defendant Grant introduced evidence tending to establish an alibi.  Parker presented no evidence.  The jury found Reddy, Grant and Parker guilty as charged.  From sentences of twenty-five years imprisonment for Grant, twenty years imprisonment for Reddy, and ten years imprisonment for Parker, the defendants filed notice of appeal.

Certiorari was granted to allow sufficient time to perfect appeal.

*Attorney General Morgan, by Assistant Attorney. General Magner and Associate Attorney Heidgerd, for the State.*

*Chambers, Stein, Ferguson & Lanning, by James E. Ferguson II; and William H. Allison, Jr., for defendant appellants.*

BALEY, Judge.

Defendants have filed numerous exceptions and assignments of error in a voluminous record.  Their dissatisfaction with their trial falls generally into the following categories:

1.  In the selection of the jury including the method of securing the jury list from which both the grand jury and petit jury are chosen and challenges for cause during the *voir dire.*

2.  Violation of constitutional rights by securing an indictment without first granting a preliminary hearing.

3.  Rulings concerning admission or exclusion of evidence.

4.  Objections to the charge.

5.   Improper sentencing procedure.

6.   General hostility of the trial court during conduct of the trial.

[1]   First, selection of the jury.   The trial court made a thorough investigation of the procedure employed in compiling the jury list in Mecklenburg County and concluded that it represented a fair cross-section of the population in the county. No evidence was presented by the defendants which demonstrated any discrimination against them by reason of race, economic status, or age group, and there was no evidence of any arbitrary or systematic exclusion from the jury of any segment of the citizenship of the county.

There appears to be no violation of any of the constitutional rights of the defendants.   *State v. Cornell*, 281 N.C. 20, 187 S.E. 2d 768.

[2]   Defendants Grant and Reddy maintain that on two occasions on *voir dire* the trial court erroneously refused to permit them to challenge jurors for cause.   G.S. 9-14 provides: "The presiding judge shall decide all questions as to the competency of jurors."

This statute has been interpreted to mean that the decision of the judge is final and not subject to review on appeal unless accompanied by some imputed error of law which does not here appear.   *State v. Suddreth*, 230 N.C. 239, 52 S.E. 2d 924; *State v. Gibbs*, 5 N.C. App. 457, 168 S.E. 2d 507.

Both of the jurors challenged for cause were eventually excused by peremptory challenges and did not serve.   While Grant and Reddy had exhausted their peremptory challenges, the defendant Parker still had peremptory challenges remaining when the jury had been selected.   Under the evidence in this case, we can perceive no prejudicial error.

[3]   The argument advanced by defendants that a preliminary hearing is an essential constitutional step in the criminal process before there can be prosecution under a valid bill of indictment has been rejected in a long line of North Carolina cases the most recent of which are *State v. Harrington*, 283 N.C. 527, 196 S.E. 2d 742 (1973) ; and *State v. Thornton*, 283 N.C. 513, 196 S.E. 2d 701 (1973). *See also Gasque v. State*, 271 N.C. 323, 156 S.E. 2d 740, *cert. denied*, 390 U.S. 1030, 20 L.Ed. 2d 288, 88 S.Ct. 1423. This assignment of error is overruled.

[4] The third category relates to a wide variety of rulings concerning the introduction of evidence. Defendants strenuously object to any testimony concerning prior meetings of the "United Souls" and any discussions indicating the temperament and intent of the membership of this group of young black men. State's witnesses were permitted to testify that defendants met together in the Tenth Street Recreation Center and discussed the problems of black people in Charlotte and the use of "revolutionary tactics" to deal with these problems; that at these meetings defendants smoked marijuana and conducted instruction sessions in the use of firearms and firebombs commonly identified as "Molotov Cocktails." This evidence was properly admitted because it shows motive and intent. It indicates that defendants were so concerned about racial prejudice that they were willing to consider violent methods of retaliating against it. "The existence of a motive is . . . a circumstance tending to make it more probable that the person in question did the act, hence evidence of motive is always admissible where the doing of the act is in dispute." 1 Stansbury, N. C. Evidence (Brandis rev.), § 83, at 254; *accord, State v. Church,* 231 N.C. 39, 55 S.E. 2d 792; *State v. Walker,* 6 N.C. App. 740, 171 S.E. 2d 91; *see State v. Wilcox,* 132 N.C. 1120, 1144, 44 S.E. 625, 633.

In *State v. Green,* 92 N.C. 779, 783, the court in a felonious burning case stated the rule:

"For 'where it is shown that a crime has been committed, and the circumstances point to the accused as the perpetrator, facts tending to show a motive, although remote, are admissible in evidence.' "

Evidence of prior meetings and conduct at such meetings of those accused of committing a crime has been held admissible, *State v. Hairston,* 280 N.C. 220, 185 S.E. 2d 633, even though such evidence may disclose the commission of another offense. *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47. Any reference to marijuana in the present case was irrelevant and mentioned only in passing and could not have affected the outcome of the trial. *State v. Rainey,* 236 N.C. 738, 74 S.E. 2d 39.

[5, 6] At one point in the trial a character witness for the defendant Grant was asked if he had ever known Grant to engage in any violent activity. The witness actually answered in the negative before the court ruled upon the State's ob-

jection.  The court properly sustained objection to this inquiry about specific traits of character of defendant Grant and directed the jury to disregard the answer of the witness.  *State v. McKissick,* 271 N.C. 500, 157 S.E. 2d 112; *State v. Sentelle,* 212 N.C. 386, 193 S.E. 405. Upon another occasion a character witness for defendant Reddy was not permitted to elaborate at length upon his opportunities to observe Reddy and know his character; however, he and other witnesses were permitted to testify that Reddy's character was good.  If the examination of this witness was improperly limited it could not have been prejudicial.

[7]  Defendants contend that the trial court should have sustained their objections to a number of questions which the Solicitor asked during cross-examination of their character witnesses.  These questions were not repetitious or argumentative, and they were intended to point out the bias of the witnesses.  A cross-examiner may ask a wide range of questions to demonstrate the bias of the witness or to test his memory. *Maddox v. Brown,* 233 N.C. 519, 64 S.E. 2d 864; 1 Stansbury, *supra,* § 42.

[8]  Before any testimony was heard the court granted defendants' motion that the State's witnesses, Hood and Washington, be sequestered.  Defendants contend that the purpose of such sequestration was to prevent one witness from patterning his testimony after that of the other, and that purpose was defeated if the examining attorney for the State was permitted to suggest an answer to the witness by means of leading questions.  This argument has some validity, and it may well be that a judge should be especially reluctant to allow leading questions when the witness has been sequestered.  Nevertheless, the allowance of leading questions is a matter within the discretion of the trial court.  *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6.  The use of occasional leading questions can save much time for the court without diminishing the accuracy of the witness's testimony.  Therefore, instead of banning such questions entirely, the courts permit the trial judge to accept those which are harmless and exclude those which are dangerously suggestive. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384; *State v. Clanton,* 278 N.C. 502, 180 S.E. 2d 5.

[9]  Defendants assign as error the admission of a motion picture of the burning stable.  The owner of the stable testified that it fairly and accurately depicted the fire, but that it was

not exactly identical to what he saw because it appeared to have been taken about two minutes before he arrived at the stable. This testimony was sufficient to authenticate the film. The admissibility of motion pictures is governed by the same rules that control the admission of photographs. *State v. Strickland,* 276 N.C. 253, 173 S.E. 2d 129. A photograph "will not necessarily be excluded because it is not an exact reproduction," if it is a fair and accurate portrayal of the scene. 1 Stansbury, *supra,* § 34, at 95-96; *see State v. Shepherd,* 220 N.C. 377, 17 S.E. 2d 469.

[10]  Upon one occasion when the solicitor was examining the witness Hood, there was an objection by counsel for the defendants and a request to be permitted to present his argument in the absence of the witness, believing that if Hood heard the argument it would suggest answers to subsequent questions. The court denied counsel's request, and rather than educate Hood, defense counsel made no argument. The question to which objection was made concerned the definition of a "Molotov Cocktail." Defendants have not shown that the failure to permit argument of counsel upon this relatively minor point in the absence of the witness could have affected the result of the trial. *State v. Rainey, supra.*

[11]  Defendants argue that the trial judge expressed an opinion in favor of the State, in violation of G.S. 1-180 by several times sustaining objections to defendants' questions and saying to defense counsel, "He has answered your question." This argument is unconvincing. "He has answered your question" was not in any way a disparaging or critical remark but merely a statement of fact. Every time the judge used this expression, defense counsel had been engaging in repetitious questioning.

The fourth major group of assigned errors concerns the charge of the court. Defendants contend that the instructions of the court with respect to the defendant Grant on the question of aiding and abetting and on the defense of alibi were insufficient. They assert that the comment of the court upon defendant Parker's failure to offer any evidence was prejudicial. They argue that the court in summarizing the contentions of the State over-emphasized the State's evidence and minimized the contentions and evidence of the defendants to defendants' prejudice. They challenge the instructions concerning testimony of an accomplice and the definition of reasonable doubt.

[12] The court instructed the jury that "to find the defendant Grant guilty of felonious burning because of aiding and abetting, the State must prove beyond a reasonable doubt . . . that, if he was not actually on the scene, as the evidence tends to show, that he shared the criminal purpose of the other persons and, to their knowledge, was aiding them or was in a position to aid them at the time the crime was committed." He also charged that to be guilty as an aider or abettor, a defendant "must aid or actively encourage the person or persons committing the crime or in some way communicate to this person or persons his intention to assist in its commission." These are correct statements of the law. *State v. Price*, 280 N.C. 154, 184 S.E. 2d 866; *State v. Sellers*, 266 N.C. 734, 147 S.E. 2d 225; *State v. Ham*, 238 N.C. 94, 76 S.E. 2d 346; 2 Strong, N.C. Index 2d, Criminal Law, § 9 at 491, 493.

In *State v. Price, supra* at 158, 184 S.E. 2d at 869, the court states:

"One who procures or commands another to commit a felony, accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close to the scene of the offense to render aid in its commission, if needed, or to provide a means by which the actual perpetrator may get away from the scene upon the completion of the offense, is a principal in the second degree and equally liable with the actual perpetrator."

According to the evidence for the State the defendant Grant in addition to fitting almost exactly the above statement of the law from *Price* prepared the firebombs and delivered them to the actual perpetrators.

[13] The excerpt from the charge about which defendant Parker complains is as follows:

"The defendant Parker, as is his right, did not introduce evidence. He contends that he ought to be found not guilty on the basis of the other evidence, both that of the State and the other defendants."

In the absence of a request from the defendant it is preferable for the court to omit any reference or implication con-

cerning the failure of the defendant to testify. It is difficult, however, to see how the implication in this case could have been prejudicial. The jury did not convict Parker and acquit the other defendants; it convicted them all. If the jury believed the testimony of the two State's witnesses who stated that they acted as lookouts and saw the actual burning of the barn, conviction of all three defendants was almost certain to follow; if the jury did not believe these witnesses, all three would have been acquitted. "Even if it be conceded *arguendo* that the charge was technically erroneous, in our opinion it was harmless error beyond a reasonable doubt." *State v. Bryant,* 283 N.C. 227, 234, 195 S.E. 2d 509, 513; *see Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967).

[14]   On the issue of alibi the court charged as follows: "[I]f, upon considering all of the evidence in the case, including the evidence with respect to alibi, you have a reasonable doubt as to the defendant Grant's presence at or participation in the crime charged, you must find him not guilty." Grant contends that this instruction was erroneous, and that the court should have said: "If, upon consideration of the evidence relating to alibi, you have a reasonable doubt as to Grant's guilt, you should return a verdict of not guilty." This seems to be a distinction without a difference; either of the two charges would appear to state accurately the law relating to alibi. The instruction actually given is substantially equivalent to that approved in *State v. Spencer,* 256 N.C. 487, 124 S.E. 2d 175. Defendant Reddy contends that he also was entitled to an instruction on alibi, because he testified that he was not at the Lazy B Riding Stables on the night of the crime. Reddy did not remember where he had been that night and offered no witnesses to testify that he had been somewhere else. A defendant who merely denies that he was at the scene of the crime, without producing any evidence to show that he was at any other place, is not entitled to an alibi instruction. *State v. Green,* 268 N.C. 690, 151 S.E. 2d 606.

No set formula is required for defining reasonable doubt. Under the standards set forth in *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133, the definition used by the trial court was satisfactory.

The language used by the court in its instruction on accomplice testimony has been approved almost verbatim in *State v. Mitchell,* 1 N.C. App. 528, 162 S.E. 2d 94.

[15] With respect to the comparative attention accorded by the court to the evidence for the State and that for the defendants in its summary to the jury, we find no error. The court summarized the evidence fairly and accurately showing no bias in favor of either the State or the defendants. The fact that more time was devoted to the State's evidence than to that of the defendants was to be expected since the State presented far more evidence. *State v. Jessup,* 219 N.C. 620, 14 S.E. 2d 668; *State v. Crutchfield,* 5 N.C. App. 586, 169 S.E. 2d 43.

[16] Next, the defendants complain of the severity of the sentences which were imposed upon them and assert that the trial judge used the educational level attained by the respective defendants as a standard for determining their sentences. They contend they were punished for their level of education rather than their crime. We find no support in the record for this novel contention of the defendants and hold it without merit.

Prior to sentencing the defendants the judge requested and was provided with information concerning the personal history and background of each of the defendants. This included their age, education and experience. He commented from the bench that in sentencing he gave consideration to the personality and background of each individual defendant in an effort to arrive at a sentence that would punish the defendant for his wrongful conduct, deter others from committing future crimes, and afford the defendant an opportunity for rehabilitation Such a careful and systematic approach to sentencing deserves to be encouraged, not hindered. But if defendants can obtain new trials or reduced sentences by sifting through the personal information furnished to the judge and picking out chance correlations with the severity of their sentences, judges will be discouraged from seeking out such personal information and attempting to impose a sentence that is appropriate to the individual. Such a result would not be in the interest of the administration of justice.

Finally, defendants contend that the atmosphere at their trial was one of hostility; that their case was treated by the court and prosecution in a special way because of its racial or political overtones, and that to remedy this the case should also receive special treatment on appeal. An examination of the record does not support defendants' contention that the court was hostile to them. The trial judge maintained a scrupulous

---

neutrality at all times. While the cold record cannot convey the tension existing at trial, it is obvious that this is a criminal case of a nature which would attract public attention. It was necessary for the court to maintain discipline and decorum in the courtroom and its environs. The action of the court in prohibiting picketing, parading, and congregating in and around the courthouse and in requiring spectators to submit to a search for weapons before entering the courtroom was entirely proper. There may be a few minor errors in the trial, but no human being could preside over pretrial hearings and a six-day trial involving hundreds of legal questions to be ruled on instantaneously without making a single mistake. Defendants cannot expect the impossible—a perfect trial. *Lutwak v. United States,* 344 U.S. 604, 97 L.Ed. 593, 73 S.Ct. 481. What they are entitled to expect is a trial that is fair and free from prejudicial error. This they received, and their convictions should be affirmed.

We do not deem it necessary to catalogue and discuss individually all the exceptions brought forward by the defendants. Suffice it to say that we have examined each of them and find no error sufficiently prejudicial to warrant a new trial.

No error.

Chief Judge BROCK and Judge BRITT concur.