Thomas James **REDDY** et al., Appellants,

v.

David L. **JONES** et al., Appellees.

**North Carolina Civil Liberties Union Legal Foundation, Inc., Amicus Curiae.**

No. 77–1480.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1977.

Decided Nov. 3, 1977.

James E. Ferguson, II, Charlotte, N. C. (James C. Fuller, Jr. and Adam Stein, Chambers, Stein, Ferguson & Becton, Charlotte, N. C., on brief), for appellants.

Richard N. League, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief), for appellees.

Before BRYAN and FIELD, Senior Circuit Judges, and WIDENER, Circuit Judge.

PER CURIAM:

Thomas James Reddy, James Earl Grant, Jr., and Charles Parker, having exhausted all available State remedies, seek Federal habeas corpus relief under 28 U.S.C. § 2241 from imprisonment under 1972 court convictions in North Carolina for the felonious burning of a riding stable near Charlotte.

In this appeal from the District Court's dismissal of their petition, appellants claim that at trial the prosecution did not seasonably disclose to them all of its promises to two key witnesses. Likewise, they allege that they were not informed of an exculpatory statement of one of these witnesses or of an undertaking by the prosecutor to seek the termination of an outstanding probationary sentence. Thus, appellants contend, they were denied the right to confront and cross-examine witnesses against them, undeniably Fourteenth and Sixth Amendments assurances.

 The District Judge found these assignments of error to be without merit, and we affirm upon his comprehensive opinion. *Thomas James Reddy, et al. v. David L. Jones, Secretary, North Carolina Department of Correction, et al.*, No. C–C–76–118 (W.D.N.C.1976).*

Affirmed.

## MEMORANDUM AND ORDER

WOODROW WILSON JONES, Chief Judge.

The Petitioners, James Earl Grant, Jr., and Thomas James Reddy, who are presently incarcerated in the prison system of the State of North Carolina, and Charles Parker, who is presently under the custody and control of the North Carolina Board of Paroles, seek federal habeas corpus relief claiming that the present restraints upon their liberty are unconstitutional in that they were denied their right to a fair trial and the right to confront and cross-examine the witnesses against them in violation of the Fourteenth and Sixth Amendments of the United States Constitution. The Petitioners contend that the prosecution, in the state criminal proceeding at issue, failed to disclose all of the promises made to the two key prosecution witnesses which were intended to induce testimony against the Pe-

---

* In view of the outcome of this appeal, the court has no occasion to rule on the appellees' "Motion to Strike Appendix Pages and Brief Page References".

titioners. Furthermore, the Petitioners contend that the prosecution failed to disclose the substance of an exculpatory statement made by one of these witnesses and which was in the possession of an investigating officer.

The Attorney General of North Carolina has answered, moved to dismiss, and furnished the Court, inter alia, a copy of the record in the trial court below, the record of the post-conviction proceedings before Judge Ervin, his findings and conclusions based upon that record, and the record in the case of *United States of America v. James Earl Grant, Jr., and Benjamin Chavis, Jr.*, Cr. No. 63–71 (EDNC 1972).

The Petitioners, Reddy, Parker, and Grant, were tried jointly at the July 10, 1972 Criminal Term of the Mecklenburg County Superior Court and were convicted of the unlawful burning of the Lazy B Riding Stables on or about September 24, 1968. Petitioner Grant was sentenced to 25 years in the State's prison; Petitioner Reddy received 20 years imprisonment, and Petitioner Parker received 10 years imprisonment. All appealed their convictions and sentences to the North Carolina Court of Appeals which, in an opinion reported in 19 N.C.App. 401, 199 S.E.2d 14 (1973), found no error. On November 1, 1973 the North Carolina Supreme Court denied the Petitioners' Petition for a writ of certiorari and dismissed their appeal. 284 N.C. 256, 200 S.E.2d 656 (1973). Thereafter, the Petitioners filed for post-conviction relief in the Mecklenburg County Superior Court and on September 24, 1975 the Honorable Sam J. Ervin, III, denied their motion. A petition for a writ of certiorari to review Judge Ervin's decision was denied by the North Carolina Court of Appeals on March 10, 1976. This Petition followed raising the same issues that were presented before Judge Ervin. The Court therefore finds and concludes that the Petitioners have exhausted their state remedies as required by the statute, 28 U.S.C.A. § 2254, and that this Court has jurisdiction to determine those issues.

It is well settled that a presumption of correctness attaches to State determinations made after a hearing on the merits and evidenced by written findings or opinion, and the burden is on the petitioner to establish by convincing evidence that the State findings are erroneous. 28 U.S.C.A. § 2254(d). When this standard is measured against the case at bar, it is clear that the Petitioners have failed to meet their burden of establishing any of the eight criteria listed in 28 U.S.C.A. § 2254(d) which are necessary to rebut the presumption of correctness attaching to the State court determination. This being the case, it is the conclusion of this Court that the Petitioners' Petition for a Writ of Habeas Corpus should be denied.

First, the Court addresses the Petitioners' allegation that federal and State law enforcement officials promised Theodore Alfred Hood and Walter David Washington cash payments in return for their testimony against the Petitioners in the State trial, and against Petitioner Grant in a federal trial. The Petitioners contend that the United States Government did in fact make cash payments of at least $4,000.00 each to Washington and Hood; the first payment of $3,000.00 to each witness occurring on July 20, 1972, five days after the completion of the Petitioners' State trial, and an additional $1,000.00 to each witness occurring on or about August 21 or 22, 1972. The Petitioners contend that neither Washington nor Hood revealed these promises when asked upon the witness stand why they were testifying. The Petitioners allege that the Mecklenburg County District Attorney, or members of his staff, or investigating officers connected with the case, knew of these promises of cash payments, but refused to reveal them to the Petitioners as required by court order. It is the Petitioners' position that such refusal prejudiced their rights at trial by denying them effective and thorough cross-examination of these witnesses, and upon this basis they say they are entitled to the issuance of the writ.

In speaking to this very question, Judge Ervin found that prior to a federal trial arising out of events occurring in Oxford, North Carolina, in which Petitioner Grant was involved, Hood and Washington made detailed statements to federal authorities implicating themselves, the Petitioners, and others, in certain federal and state criminal activities, including the burning of the Lazy B Riding Stables near Charlotte. In return for these statements, Hood and Washington were promised by the *federal* authorities that they would be granted immunity from federal prosecution for the Oxford occurrence, would be placed in protective custody, and would receive relocation money after the federal trial. These promises did not involve State officials and did not relate in any way to the State prosecution arising out of the burning of the Lazy B Stables. Judge Ervin also found that neither the Petitioners' counsel, nor any one representing the State, was aware of the promise of federal relocation money for these witnesses until after the State trial. The fact that these payments followed shortly after the State conviction merely reflected the fact that the witnesses were not available for relocation before that time.

Upon the foregoing findings, Judge Ervin concluded that the State took no part in these negotiations, and that the promise of relocation money was never disclosed to the State District Attorney. Judge Ervin took the view that a State District Attorney cannot be expected to disclose information which was not in his possession and about which he knew absolutely nothing. He noted that the State District Attorney made a full disclosure to the Petitioners, and to their counsel, of his agreement to grant Hood and Washington immunity from *State* prosecution in exchange for their testimony at the State trial. According to the pretrial order, as interpreted by Judge Ervin, the State had complied with the letter and spirit of said order, and relief for nondisclosure of the federal relocation payments was denied.

After a careful examination of the record in the trial court below, the record of the post-conviction proceedings before Judge Ervin, and upon a review of the record in *United States of America v. James Earl Grant, Jr., and Benjamin Chavis, Jr.*, Cr. No. 63–71 (EDNC 1972), the Court finds that Judge Ervin's findings on this point are correct and hereby adopts them as its own.

Moreover, the cases of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1973); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Boone v. Paderick*, 541 F.2d 447 (4th Cir. 1976), are readily distinguishable. Those cases, taken together, stand for the principle that facts bearing upon the credibility of a witness, which if not revealed might falsely mislead a jury, must be revealed, whether the knowledge of such facts resides with the police or the prosecutor. This rule was effectively incorporated into Judge Snepp's pretrial order in the case at bar when he commanded the State to ". . . furnish to counsel for the defendants copies of any written or recorded statements and the substance of any oral statements made to *investigating* officers by any person the State may intend to call as a witness in the trial of these cases." (Emphasis added).

In the opinion of this Court the designation of "investigating officer" in Judge Snepp's order properly focuses the rule gleaned from *Giglio* and *Brady*, and provides the distinction in the instant case. The officers who possessed the knowledge of the relocation promises were federally employed and working on a case involving a federal crime occurring in Oxford, North Carolina. They were not involved in the State prosecution of the Petitioners for the burning of the Lazy B Stables. Although some conversation did occur between State and federal officials, the federal agents never investigated the Lazy B incident in preparation for the State trial, and never revealed any promise to State officials of cash payments made to these witnesses. Furthermore, the State authorities involved in the investigation and prosecution of this case uncovered no promise of relocation money. Certainly State officials cannot be

required to have command of all information, regardless of the source, relating to a pending case. Although proper insurers of the veracity of their own investigations, they cannot be called upon to foretell the knowledge of others resting in some foreign sphere. It is therefore the conclusion of this Court that the Petitioners' Petition should be denied as to this claim.

Parenthetically, the Court finds that should the nondisclosure of this federal promise of relocation money be error, it is not an error of such magnitude to require the issuance of the Writ. *Cf. United States of America v. Allen*, 4 Cir., 535 F.2d 1251, and *United States of America v. Patrick*, 535 F.2d 1251 (4th Cir. decided March 1, 1976). This is particularly so since the disclosure of this promise would be cumulative to the promises, all of which were known to the jury, of complete federal and State immunity; their release upon their own bond; their federal protective custody; and of the payment of federal funds for living expenses for themselves and their families. In addition the jury was informed that the witnesses were then residing outside of the United States. (Record, pp. 241, 245, 246, 247, 248, 249, 259, 264, 265, 266, 269, 282, 283, 285, 286, 287, 288, 294 and 296). Therefore, the jury was well aware of the motivation for the testimony of these witnesses without the disclosure of this promise.

■ Turning to the allegation that the State officials failed to disclose an exculpatory statement which was in their possession, the Court finds that the rationale applied in the foregoing discussion is also dispositive of this matter.

The Petitioners contend that prior to and during July, 1972, Federal ATF Officer William Walden had in his possession the substance of an oral statement made by Walter David Washington, wherein Washington stated that he did not see who actually threw the firebombs at the Lazy B Stables at the time it was burned. The Petitioners point out that this statement is inconsistent with Washington's testimony at the State trial in which he described in detail the burning of the stable and related

the fact that Petitioners Parker and Reddy threw the firebombs. It is the Petitioners' contention that federal officer Walden assisted in the investigation and prosecution of the State's case and was therefore under a duty to disclose the essence of the exculpatory statement to Petitioners' counsel prior to trial. The Petitioners contend that Walden's failure to do so deprived them of their right to effectively cross-examine Washington at trial.

However, the findings of Judge Ervin show that the memorandum prepared by ATF Agent Walden, reflecting Washington's statement, was addressed to the Chief Special Investigator, Charlotte, N. C., Mr. Walden's superior. This was a federal inter-office memo and was never delivered to, nor discussed with, State authorities. Judge Ervin found that the State authorities were not aware of the statement's existence until after the State trial, and assuming that the memo was exculpatory in character, the State had no duty to disclose that which they did not know. Again, Judge Ervin found that the State faithfully complied with the pretrial order, and that post-conviction relief could not rest upon this ground.

Once more the cases of *Giglio, Brady*, and *Boone* are distinguishable on the separate entities theory. The statement, if exculpatory, was obtained by federal authorities in the investigation of an unrelated federal crime. These federal authorities did not investigate the State's case. Additionally, the State was not apprised of the contents of these statements or of their existence, and the State's own independent investigation failed to uncover the same. Therefore, in the opinion of this Court these findings are compelled by the evidence, as is the denial of the Petition on this claim.

Alternatively, assuming arguendo that the State District Attorney was under a duty to disclose Washington's statement to federal agent Walden, the Court finds that its disclosure would not have created a reasonable likelihood that the judgment of the jury would have been affected. Wash-

ington's trial testimony and his statement to Agent Walden both implicate the Petitioners in the fire bombing of the Lazy B. Admittedly, the trial testimony recounts his clear view of the incident and names Petitioners Reddy and Grant as the culprits who threw the firebombs, whereas his statement to Agent Walden says he did not actually see who threw the firebombs. However, the statement also reveals that Petitioner Grant prepared the Molotov Cocktail, and that Grant, Reddy, Parker, Washington, and Albert Hood then proceeded to the Lazy B Stables in order to firebomb it.

Although the inconsistency in these statements is material as to credibility, it is not of such a character as to create a reasonable likelihood that would affect the judgment of the jury. *Cf. Perry v. Warden, Maryland Penitentiary,* 534 F.2d 328 (4th Cir. 1976). Even though the inconsistency is of an impeaching nature, the corroborative effect of the prior implication of all these Petitioners in the crime at issue is a balancing factor which compels this Court to conclude that the nondisclosure of the statement, if improper, does not mandate the issuance of the Great Writ.[1]

■ Finally, the Court reaches consideration of the Petitioners' allegation that the State prosecutor promised the witness Washington that he would seek to terminate a 25-year probationary sentence for armed robbery then in effect in return for Washington's testimony in the Lazy B trial. The Petitioners further allege that Washington failed to reveal this promise from the witness stand when asked, and contend that the failure of the prosecutor to reveal this promise prior to trial prejudiced their rights before the jury.

The findings of Judge Ervin reflect that State District Attorney Moore did indeed decide to terminate Washington's probation in return for this testimony, and although he never personally informed Washington of this prior to the State trial, ATF Agent Noell, who was aware of Moore's intentions, informed Washington. Therefore, the witness was aware of this promise prior to the testimony in question. However, Judge Ervin concluded that this disclosure was not required by the pretrial order, and in light of all the other derogatory information which the Petitioners' attorneys possessed about Hood and Washington, the State's failure to reveal this promise was harmless error beyond a reasonable doubt.

Although this Court agrees in essence with the findings and conclusions reached by Judge Ervin, it finds it necessary to expound on this ruling in light of *Leroy Boone v. E. L. Patrick, Superintendent of the Virginia State Penitentiary, supra.*

In *Boone,* the Circuit Court of Appeals reversed a district court's denial of a writ of habeas corpus finding a denial of due process when the prosecutor concealed an offer of favorable treatment to *Boone's* principal accuser. There the prosecuting witness was promised by the investigating detective that he would not be arrested for the burglary in question or for any other known offenses, and that influence would be exercised upon the Commonwealth Attorney to see that he would not be prosecuted. *Boone's* attorney was never informed by the prosecutor or the detective of these promises made to the prosecuting witness, and the witness denied receiving any such promises on the stand.

In reaching its decision the Fourth Circuit relied upon *Giglio, supra,* and found the controlling issue to be whether the false testimony could in any reasonable likelihood have affected the judgment of the jury. In determining that issue the court looked

---

1. Agent Walden's report reflects that:

 ". . . Washington said he was with T. J. Reddy, Charles Parker, Alfred Hood, Mary Smith, and Jim Grant. At this time, Grant put together a Molotov Cocktail using various ingredients and transported this bomb along with T. J. Reddy, Charlie Parker, Al Hood and David Washington to the Lazy Boy Stable. Washington states that he did not see who actually threw the bomb but that this fire bombing resulted from a group of negroes being refused services at this table (sic)."

upon the importance of the witness' testimony, which would be affected by his credibility, and the weight of the independent evidence of guilt. Applying this test, that court reversed the district court's denial of the writ. However, upon an application of this test to the facts presented in this case, it is the opinion of this Court that the nonrevelation of the promise at issue was harmless error as found by Judge Ervin.

First, the prosecutor in *Boone* made statements before the jury which were intended to give the impression that the witness knew nothing about possible lenient treatment, that he testified against rather than in aid of his interest, and that his testimony in general was the product of active conscience. Based upon these prosecutorial misstatements of altruism, the appellate court found that there was a reasonable likelihood that the jury would have reached a different result had they known the true facts.

By comparison, the prosecutor in the case at bar attributed no altruistic motives to the witness Washington, but instead announced in open court before all prospective jurors that State charges against Hood and Washington would not be brought in return for their testimony against the Petitioners. Furthermore, the trial judge instructed the jury that Hood and Washington had been promised immunity and had been given certain concrete benefits because of their testimony. Admittedly, the promise of probation termination for Washington was not revealed to the jury as to the motivation for Washington's testimony. At most, the revelation of this promise would have been cumulative and the effect minimal. Therefore, the facts of the instant case fall short of the "reasonable likelihood" test set forth in *Boone.*

Second, the weight of the independent evidence in this case is far stronger than that in *Boone.* In *Boone,* the physical evidence was minimal, and, although three other witnesses implicated *Boone* in the crime, only the witness who had been of-

fered the unrevealed promise of leniency was an admitted participant in that crime.

By comparison, the testimony of Albert Hood in the Lazy B trial shows his admitted participation in the crime. Furthermore, his statements appear as damaging to the Petitioners as those of Washington. From a review of the record, it appears to the Court that the testimony of Albert Hood alone would have provided a sufficient basis for a jury to return a verdict of guilty against these Petitioners.

Therefore, the independent evidence in the instant case is far stronger than that in *Boone,* and thereby an additional failure to meet the "reasonable likelihood" test appears. For these reasons, and for the reasons set forth by Judge Ervin, the Court finds that the Petitioners' third claim is without merit, and that the Writ should be denied.

In conclusion, it appears to the Court that the merits of the factual disputes, relating to this Petition for a Writ of Habeas Corpus, were resolved in the State court post-conviction hearing. Furthermore, the Court finds that the State court, which had jurisdiction pursuant to North Carolina statutes, adequately developed all material facts and afforded a full and fair hearing to the Petitioners who were represented in that matter by legal counsel. The Court finds that the Petitioners received a full, fair, and adequate hearing in the State court, and that the factual determinations made by that court are fully supported by the record. The Court therefore concludes that the Petitioners received full due process of law in the State court post-conviction hearing. The Court has reviewed the trial record and finds that the Petitioners had a fair trial and that their constitutional rights were not violated.

IT IS, THEREFORE, ORDERED that the Petitioners' Petition for a Writ of Habeas Corpus be, and the same is hereby denied. It is further ORDERED that the Petitioners Grant and Reddy be immediately returned to the custody of the State of North Carolina.

ORDER DENYING PETITION FOR
REHEARING AND DIRECTING
PUBLICATION OF OPINIONS

ALBERT V. BRYAN, Senior Circuit Judge.

It appearing that the petition of the appellants for a rehearing in banc has failed to receive the favorable votes of a majority of the judges of this court in regular active service, it is now

ORDERED that the said petition be, and it is, hereby denied, Judges WINTER and BUTZNER dissenting, and further that the Clerk publish the opinion of the District Court in this case and the opinion of the panel of this court which heard the case, together with the separate statement of Judge FIELD, as well as the dissenting opinion of Judge BUTZNER.

Done with the concurrence of Judge FIELD and Judge WIDENER this 31st day of January, 1978.

BUTZNER, Circuit Judge, dissenting:

I respectfully dissent from the denial of the petition for rehearing en banc.

Thomas James Reddy, James Earl Grant, Jr., and Charles Parker, appellants, were convicted in the Superior Court of Mecklenburg County, North Carolina, of unlawfully burning the Lazy B Riding Stables. After exhausting their state remedies, they applied to the district court for a writ of habeas corpus, which was denied. A panel of this court affirmed on the basis of the district court's opinion, and a majority of the judges in active service voted to deny rehearing en banc.

The record discloses that the appellants had made formal requests for information about all promises offered to two of the state's witnesses, Thomas Alfred Hood and Walter David Washington, and all exculpatory evidence. Although their motion was granted, it is undisputed that not all of this information was furnished their counsel.

Hood and Washington had made detailed statements to federal agents implicating themselves and the appellants in the violation of federal and state criminal laws, including the burning of the Lazy B Stables. In return for these statements, the federal authorities promised Hood and Washington that they would be granted immunity from federal prosecution, placed in protective custody, and furnished relocation money.

Hood and Washington were cross-examined about the inducements for their testimony. Neither mentioned the promise of money. Nevertheless, at the conclusion of the trial each was paid $4,000, one thousand of which was designated as a reward.

Washington gave a federal agent a statement that he did not see who actually threw the fire bombs at the stables. This statement is inconsistent with Washington's testimony that Parker and Reddy threw the fire bombs.

The district court ruled that the failure to disclose the promise of payment did not violate the due process clause because the promise had been made by federal authorities and the state prosecutor was unaware of it. It also ruled that the non-disclosure of Washington's exculpatory statement afforded no grounds for relief because it was made to a federal agent who did not transmit it to the state. Alternatively, it held that non-disclosure was harmless. Under the circumstances, this alternative ruling is difficult to sustain, and quite properly the panel did not rely solely on it when disposing of the appeal. Instead, the panel affirmed on the district judge's "comprehensive opinion," which, as I have indicated, is primarily based on the theory that non-disclosure did not violate the fourteenth amendment's guarantee of due process.

The failure of a prosecutor to correct the false testimony of a witness about promises in consideration for his testimony violates an accused's right to due process of law. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1950). This principle is applicable even though the prosecutor was unaware that someone else in his office had made the promise. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Similarly, an accused is

denied due process when the prosecution suppresses a witness's exculpatory statement that is material either to guilt or to punishment regardless of the good faith of the prosecutor. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

This case therefore raises the following issues:

When a state prosecutor receives statements of witnesses from federal officials, does the prosecutor have a duty to inquire about all inducements made to the witnesses for their favorable testimony if this information is requested by defense counsel?

Under these circumstances does the state prosecutor also have a duty to inquire about exculpatory statements made by these witnesses to the federal officials?

Do the federal officials have a correlative duty to disclose to the state prosecutor the inducements they offered to the witnesses and the exculpatory statements made by the witnesses?

The district court did not recognize the existence of such duties, and consequently it held that the non-disclosure of the information the appellants had requested did not deny them due process.

I think that this use of a silver platter to restrict application of the principles of *Napue, Giglio,* and *Brady,* is of sufficient importance to warrant en banc consideration. Cf. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

Judge WINTER authorizes me to say that he joins in this dissenting opinion.

FIELD, Senior Circuit Judge, statement on rehearing:

I, of course, was not entitled to vote upon the suggestion for rehearing en banc, but as a member of the panel I voted against rehearing. In doing so, I found it unnecessary to reach the issues framed by Judge BUTZNER in his note of dissent since in my opinion there is no "reasonable likelihood [that the nondisclosure of information would] have affected the judgment of the jury." *Napue v. Illinois,* 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959). This was the conclusion reached by both the state post-conviction judge and the district court and is solidly supported by the record.

The record shows, among other things, that the jury was made aware of the fact that Hood and Washington had received federal and state immunity and were the subjects of federal protective custody, and that they, together with their families, were receiving federal funds to cover their living expenses. In addition to these facts, trial counsel for the petitioners elicited upon cross-examination that both Hood and Washington had prior felony convictions; that they had lied on prior occasions to the authorities; and that parts of their previous statements were untrue. Based upon these admissions, defense counsel referred to them at various times as "hardened criminals", "confirmed liars", and "convicted criminals". In the light of all of this derogatory information which the petitioners' attorneys possessed and were able to place before the jury, I agree with the state judge that it would be unrealistic to suggest that the disclosure of this additional information would have influenced the jury to reach a different result in these cases.

Judge BRYAN and Judge WIDENER authorize me to say that they join in this statement.